788 So.2d 736 (2001)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Ellis WILLARD.
No. 2000-JP-01163-SCT.
Supreme Court of Mississippi.
June 14, 2001.
*738 Luther T. Brantley, III, Irene Mikell Buckley, Attorneys for Appellant.
Arnold D. Dyre, Jackson, Brian Austin Hinton, Columbus, Attorneys for Appellee.
EN BANC.
COBB, Justice, for the Court:
¶ 1. The Mississippi Commission on Judicial Performance (Commission) filed a formal complaint charging Sharkey County Justice Court Judge Ellis Willard with judicial misconduct. The formal complaint was twice amended by the Commission without objection from Willard. The complaint consists of 31 counts of alleged misconduct. After investigation, a panel of Commission members conducted a hearing and concluded there was judicial misconduct, proven by clear and convincing evidence, on 24 of the counts. The panel submitted its Committee Findings of Fact and Recommendation to the full Commission, which voted unanimously to accept the Committee's report. The Commission then recommended to this Court that Willard be removed from office and taxed with all costs accrued in this matter, in the amount of $9,084.66. It also recommended suspending Willard from judicial office pending the outcome of this proceeding. This Court granted the Commission's motion for an interim suspension by order handed down on October 12, 2000.
¶ 2. Having conducted a de novo review of the entire record, this Court accepts and adopts the Commission's findings and recommended sanctions.

FACTS
¶ 3. At all times during the proceedings of the Commission, except the period of time between September 30, 1999, and January 2, 2000, Ellis Willard was sitting as a Justice Court Judge of Sharkey County, Mississippi. The 31 counts of alleged misconduct against Judge Willard were designated during the hearing, and are discussed herein, by the following numbers:
(1) Improperly accepting payment or partial payment of fines payable to the justice court.
(2) Improperly suspending fines for violations of the Implied Consent Law.
(3) Improperly dismissing a DUI charge on his own motion.
(4) Improperly engaging in ex parte communications and improperly dismissing traffic citations for four defendants who did not appear in court.
(5) Improperly dismissing a DUI 2d charge ex parte, on his own motion, without the defendant being present and without any testimony.
(6) Improperly rendering a verdict of not guilty related to a hunting violation.
(7) Improperly engaging in ex parte communications and conducting Justice Court business at his tire and pawn shop.

*739 (8) Improperly rendering a verdict of not-guilty following ex parte communications.
(9) Dismissed by Commission-improperly engaging in ex parte communications and dismissing a speeding charge following the communication.
(10) Improperly conducting a hearing concerning an alleged violation of probation in which the defendant did not receive notice and was not advised of his due process rights, of his right to an attorney or of his right to remain silent.
(11) Improperly suspending a fine without the authority to do so and without knowledge of the underlying charges.
(12) Improperly utilized a criminal process to collect a civil debt.
(13) Improperly dismissing a criminal conviction and canceling the ordered restitution.
(14) Improperly dismissing a case ex parte.
(15) Improperly contacting a law enforcement officer regarding a criminal case.
(16) Dismissed by Commissionimproperly contacting law enforcement officers regarding pending criminal case.
(17) Improperly contacting law enforcement officials during a criminal trial, improperly engaging in other ex parte communications and improperly dismissing criminal charges.
(18) Improperly issuing an arrest warrant for someone who did not actually owe any fines.
(19) Improperly reducing the interest rate in a contract which was the subject of a civil action.
(20) Improperly dismissing a speeding charge in the absence of both the arresting officer and the defendant.
(21) Dismissed by Commissionimproperly granting a continuance in a civil case.
(22) Dismissed by Commissionmaking improper comments regarding court personnel.
(23) Improperly conducting ex parte communications with the defendant regarding citations for hunting violations.
(24) Improperly conducting a contempt hearing where there had been no sworn affidavit or warrant issued.
(25) Improperly issuing a citation for contempt of court without providing the alleged contemner any notice or advising her of her rights.
(26) Dismissed by CommissionRefusing to keep office hours during regular court time.[1]
(27) This count was initially the final count and is duplicative of count 31.
(28) Improperly convicting a defendant without creating a file and without notice or hearing.
(29) Improperly sentencing justice court clerk to contempt of court without notice and improperly refusing her repeated requests for an attorney.
(30) Interfering with the administrative functions of the justice court by refusing to allow the justice court clerk or deputy clerk to appear in court when he is conducting court.
(31) Judge Willard's conduct as set forth above violates Section 177A of the Mississippi Constitution of 1890, as amended. The conduct of Judge Willard constitutes willful misconduct in office, willful and persistent failure to perform the duties of his office and conduct prejudicial to the administration of justice *740 which brings the judicial office into disrepute.
¶ 4. After completion of the Commission's investigation, a three-member panel of the Commission, composed of Chancellor Patricia D. Wise, Richard D. Foxworth and Rankin County Justice Court Judge Billy Ray Mangum, conducted eight days of hearings. After hearing testimony from numerous witnesses, considering the evidence and arguments of counsel, and reviewing all evidence and testimony, the panel filed its Findings of Fact and Recommendations. Twenty-four counts of judicial misconduct were determined by the panel to have been proven by clear and convincing evidence. This Court granted the Commission's motion for an interim suspension by order handed down on October 12, 2000.
¶ 5. The issues before this Court are as follows:
I. WHETHER JUDGE WILLARD'S CONDUCT CONSTITUTES WILLFUL MISCONDUCT IN OFFICE; WILLFUL AND PERSISTENT FAILURE TO PERFORM DUTIES AND CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BRINGS THE JUDICIAL OFFICE INTO DISREPUTE PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED?
II. WHETHER JUDGE WILLARD SHOULD BE REMOVED FROM OFFICE AND TAXED WITH ALL COSTS OF THIS PROCEEDING PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED?

STANDARD OF REVIEW
¶ 6. The appropriate standard of review used in a judicial disciplinary proceeding is derived from Rule 10(E) of the Rules of the Mississippi Commission on Judicial Performance, which states:
Based upon a review of the entire record, the Supreme Court shall prepare and publish a written opinion and judgment directing such disciplinary action, if any, as it finds just and proper. The Supreme Court may accept, reject, or modify, in whole or in part, the findings and recommendation of the Commission. In the event that more than one (1) recommendation for discipline of the judge is filed, the Supreme Court may render a single decision or impose a single sanction with respect to all recommendations.
Mississippi Comm'n on Judicial Performance v. Sanders, 708 So.2d 866, 871 (Miss.1998). This Court conducts a de novo review of judicial misconduct proceedings, giving great deference to the recommendations of the Commission. The Commission's findings must be based on clear and convincing evidence. This Court is not bound by the recommendations and must render an independent judgment. Mississippi Comm'n on Judicial Performance v. Spencer, 725 So.2d 171, 174 (Miss.1998) (collecting authorities).

ANALYSIS

I. WHETHER JUDGE WILLARD'S CONDUCT CONSTITUTES WILLFUL MISCONDUCT IN OFFICE; WILLFUL AND PERSISTENT FAILURE TO PERFORM DUTIES AND CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BRINGS THE JUDICIAL OFFICE INTO DISREPUTE PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION, AS AMENDED?
¶ 7. Judge Willard contends the use of a three-judge panel by the Commission *741 taints the Commission's findings. He argues Section 177A of the Mississippi Constitution does not authorize such a panel. Willard objects to the fact that "a majority of the Commission have [sic] never observed a witness, heard or considered testimony, and were [sic] totally dependent upon the recommendation of a minority of the Commission when making the Commission's findings and recommend[ation]...." This Court has previously upheld the use of such a three-member panel by the Commission noting:
Rule 8C of the Rules of the Commission, as adopted and approved by this Court, provides: `The formal hearing shall be conducted before the entire Commission, or before a committee of the Commission, a master or a factfinder designated by the Commission.' Spencer's [the Respondent judge's] inquiry was heard by a three member committee of the Commission, duly designated and appointed in accordance with this rule. Consequently, Spencer was not denied due process.
Spencer, 725 So.2d at 175.
¶ 8. Willard also contends that the numerous duties carried out by the Commission's Executive Director "prevent the process from meeting substantive due process and makes it unfair to the respondent judge." However, this Court has previously held that the multiple roles of the Commission as both investigator and prosecutor and "[t]he processes of the Commission do not in and of themselves appear to present an unreasonable risk of bias." Id. at 174-75 (citing Mississippi Comm'n on Judicial Performance v. Russell, 691 So.2d 929 (Miss.1997)). We are not persuaded by Willard's argument.
¶ 9. To analyze the numerous counts before us we have grouped them, by subject matter, into four categories.

(A) Ex Parte Communications
¶ 10. At least 20 of the 30 counts of misconduct filed against Judge Willard contain instances of ex parte communications which were confirmed by the Commission. Willard admits to some of these communications, including those involved in count 1 (suspension of DUI fines); count 11 (suspension of hunting violation fines); counts 13 and 14 (both of which involved dismissal of cases previously decided by another justice court judge) wherein he revisited previously decided cases sua sponte with no notice to the State's prosecutors or law enforcement officers. "Procedurally a hearing must be conducted unless there is a Motion to Dismiss by the prosecuting attorney." Spencer, 725 So.2d at 177; Mississippi Comm'n on Judicial Performance v. Gunn, 614 So.2d 387, 389 (Miss.1993).
¶ 11. Other counts, however involve clear violations of the prohibitions against ex parte communications, including count 3 (DUI dismissal); count 23 (the promise of dismissal of a hunting violation); and count 15 (telephone conversations with witnesses prior to his ruling on a case). "For a judge merely to listen to another person involved in pending litigation is a violation of Canon 3(A)(4)." Mississippi Comm'n on Judicial Performance v. Chinn, 611 So.2d 849, 852 (Miss.1992). Canon 3(A)(4) reads, in part, as follows:
A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard, according to law, and except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding.
Miss.Code of Judicial Conduct, Canon 3(A)(4).
¶ 12. Willard also engaged in other communications that are, based on the circumstantial *742 evidence, clearly violations of the Code of Judicial Conduct, including the "ticket fixing" case which resulted in count 4. Willard attempted to excuse his actions by pleading ignorance of the law. This Court has held that ignorance of the law is not excusable. In re Bailey, 541 So.2d 1036, 1039 (Miss.1989). We have stated:
When a person assumes the office of Justice Court Judge in this state, he or she accepts the responsibility of becoming learned in the law. When such a person takes the oath of office, he or she yields the prerogative of executing the responsibilities of the office on any basis other than the fair and impartial and competent application of the law to the facts. The preservation of the rule of law as our last best hope for the just ordering of our society requires nothing less than an insistence by this Court that our justice court judges be in fact what they are in name: judges.
Id.See also Lockett v. State, 517 So.2d 1317, 1322-23, 1341-42 (Miss.1987); McCommon v. State, 467 So.2d 940, 944-45 (Miss.1985).
¶ 13. In Spencer, 725 So.2d at 177-78, a justice court judge was removed from office because of a systematic pattern of ex parte communications. In Spencer, as in the instant case, "numerous witnesses, including court staff, law enforcement officers, the county prosecutor, the other sitting justice court judge ... and litigants before the judge in open court all testified to specific instances" of ex parte communications. Id. at 178. The list of witnesses testifying to ex parte communications by Willard is equally long and compelling. Such a systematic pattern of ex parte communications has been determined by this Court to be "willful misconduct in office" within the meaning of the constitutional provisions concerning removal from office. Id. Such communications are willful misconduct even if the judge claims, as does Willard, not to have initiated the contacts. Id.
¶ 14. Willard's numerous ex parte communications do constitute willful misconduct. In addition, the numerous communications violate Canons 1, 2A, 2B, 3A(1), 3A(2), 3A(3) and 3A(4), of the Code of Judicial Conduct.

(B) Abuse of Contempt Powers
¶ 15. The Commission concluded that on three separate occasions Judge Willard abused his contempt powers by depriving the alleged contemnor of due process. Regardless of the classification of the contempt, "[all] the rudiments of due process are required before a person can be held in contempt of court." Jeffrey Jackson, Contempt of Court, in 2 Mississippi Civil Procedure § 16A:1 (1997). See Mansour v. Charmax Indus., Inc., 680 So.2d 852, 854-55 (Miss.1996); Premeaux v. Smith, 569 So.2d 681, 684 (Miss.1990).
¶ 16. Count 24 arose from Willard sending a letter to the Justice Court Clerk advising her she was being held in contempt. The letter contained a list of charges which alleged many administrative irregularities and ordered the clerk to appear before him at which time he would accept her plea and recuse himself. No affidavit was signed, and no warrant was issued.
¶ 17. Count 25 resulted from Willard's conduct of a criminal court proceeding in which he called the deputy clerk to testify as a witness, while she was in the courtroom performing her administrative duties. She was sworn and Willard questioned her. Willard had not given her any notice that she would be called to testify and that she was going to be charged with contempt. Willard did not advise the clerk of her rights nor inquire whether she desired an attorney present. Willard later left a contempt of court affidavit which he *743 had signed against the clerk at the justice court office. The affidavit was not sworn or signed before a court clerk or officer.
¶ 18. Count 29 was brought as a result of Willard's actions while conducting court late one evening. At 11:15, he sent a request to the clerk's office seeking two files for his review. The justice court clerk, did not comply with the request and informed Willard that because she and her deputy clerk had both been at work since 8:00 that morning, she would get the files to him the next morning. Willard then sent a deputy down to threaten the clerk with contempt and she again responded that she would get the files to Willard the next morning. Willard then ordered her arrested. When the clerk was released on bond, Willard ordered her arrested again. She was never afforded notice or a lawyer.
¶ 19. Failure to follow the correct procedural safeguards of giving the accused a specific charge, notice and a hearing violates Canon 1 since disregard of the law brings the integrity and independence of the judiciary into question. These actions erode the public's confidence in Judge Willard's ability to sit as a justice court judge and thus are a violation of Canon 2A. The actions taken by Judge Willard further violate Canons 3A(1)being faithful to the law and maintaining professional competence, and 3B(1)-diligently discharging administrative responsibilities and maintaining professional competence in judicial administration. In addition, this Court has held that the misuse of contempt powers by a judge constitutes "willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute." Mississippi Judicial Performance Comm'n v. Walker, 565 So.2d 1117, 1124 (Miss.1990).

(C). Abuse of Process and Partiality
¶ 20. The record contains numerous examples of abuse of process and partiality. Counts 1 and 2 alleged Willard often collected justice court fines at his tire and pawn shop. Willard argues this was not improper because the money was ultimately delivered to the justice court clerk. These counts also included evidence Willard suspended fines imposed by himself as well as by other judges for violations of the Implied Consent Law in direct violation of Miss.Code Ann. § 99-19-25 (2000).
¶ 21. Evidence was also presented regarding instances in which Willard revisited cases which he had already adjudicated, as well as cases of other judges which had been finally adjudicated prior to Willard's service as justice court judge. (Counts 1, 2, 11, 13, 14 & 23). These readjudications took place without any notice to the State of Mississippi.
¶ 22. Willard has accepted pleas of litigants over the telephone; continued cases ex parte without notice (often over the telephone); interfered or attempted to interfere with cases from other jurisdictions ex parte; granted dismissals ex parte over the telephone; and interviewed witnesses ex parte over the telephone. (Counts 4, 6, 7, 9, 12, 13, 14, 15, 16, 17, 21 & 23).
¶ 23. In addition, Willard has admitted that he, on his own motion, rewrote the terms of a legally binding contract changing the interest rate on the contract. (Count 19). He also utilized the criminal process to collect a civil debt. (Count 12). Willard contends he did not know he could not issue such a warrant. This Court has issued public reprimands against judges who utilized the criminal process to enforce civil debts. In re Odom, 444 So.2d 835 (Miss.1984); In re Lambert, 421 So.2d 1023 (Miss.1982).
*744 ¶ 24. Further, witnesses have been forced to testify without notice, and without being advised of their right to an attorney or the right to remain silent (Counts 10 and 25). Willard has conducted hearings and ordered arrests without providing due process (Count 10, 25). As noted in count 28, Willard even ordered a tenant evicted from his home without any due process as required under both the state and federal constitutions. Willard seems to have little, if any, knowledge of or concern for the due-process rights of individuals. Even worse, Willard does not seem concerned with the need for judges to be impartial in their treatment of those who come into contact with the court. Willard's actions constitute violations of Canons 1, 2 and 3 of the Code of Judicial Conduct

(D) Lack of Integrity and Candor
¶ 25. These allegations primarily concern Willard's conduct throughout the Commission's investigatory process. One week before the hearing, Willard approached a deputy sheriff and asked him to fix a ticket for someone. It should be noted that Willard argued this testimony was prejudicial and should not have been included in the Commission's findings. Willard argues the use of this testimony reflects bias on the part of the Commission, its three-judge panel, Executive Director and counsel. Also, on at least two occasions very close to the panel hearing, Willard contacted a local police chief regarding the testimony he would be giving before the panel.
¶ 26. During the proceedings, Willard demonstrated disdain for the process through such acts as openly displaying a tape recorder during witness testimony, producing and displaying a knife during witness testimony and attempting to send messages to some members of the Commission panel by facsimile. Willard argues the Commission displays bias by even including these instances in its brief to the Court. Willard claims he did not know that recording devices were not allowed during the hearing and that knives were not allowed in the courtroom.
¶ 27. In his testimony, Willard regularly excused his conduct due to inexperience. However, this Court has noted "[w]hen a person assumes the office of Justice Court Judge in this State he or she accepts the responsibility of becoming learned in the law." In re Bailey, 541 So.2d at 1039. Willard also excused his mistakes on the basis that he did not have access to the Mississippi Code. On cross-examination, however, Willard admitted that he had access to the Code by computer.
¶ 28. Willard attempted to blame his numerous ex parte communications on the justice court clerks, alleging that the clerks had given out his phone number to numerous litigants. Willard testified that his number was not listed in the telephone directory. In contradiction of his testimony, two directories were placed into evidence. One directory was for the Vicksburg, Mississippi area and one was for Rolling Fork, Mississippi. Both directories listed Ellis Willard as Justice Court Judge and included his telephone number.
¶ 29. In counts 3, 13, 14, 18 and 20, the Commission also concluded that Willard concocted and fabricated evidence. For example, Willard introduced into evidence a docket page which had been altered (count 13).
¶ 30. The Commission concluded Willard's testimony was tantamount to perjury concerning the dismissal of the DUI charge in count 3. On the first day of testimony, Willard testified the dismissal was due to the failure of the officer to follow proper procedure. He later testified *745 the dismissal was the result of the officer signing an officer's release. Willard's testimony on the eighth day of trial was that there had been a full trial and that the defendant was acquitted. Not only did Willard contradict himself but his testimony was also contradicted by the county prosecutor, the clerk and the arresting officer. The Commission correctly concluded Willard's lack of candor constituted willful misconduct in violation of Section 177A of the Mississippi Constitution.

II. WHETHER JUDGE WILLARD SHOULD BE REMOVED FROM OFFICE AND TAXED WITH ALL COSTS OF THIS PROCEEDING PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED?
¶ 31. The Commission found by clear and convincing evidence that Judge Willard's conduct was actionable under Section 177A of the Mississippi Constitution of 1890, as amended, because it constituted "willful misconduct in office" (subsection b), "willful and persistent failure to perform the duties of his duties" (subsection c), and "conduct prejudicial to the administration of justice which brings the judicial office into disrepute ...." (subsection e).
¶ 32. Willful misconduct has been defined as the improper or wrongful use of power that involves more than an error of judgment or a mere lack of diligence. This may occur through negligence or ignorance not amounting to bad faith. Russell, 691 So.2d at 936-37 (quoting Mississippi Comm'n on Judicial Performance v. Milling, 651 So.2d 531, 538 (Miss.1995)). See also Mississippi Comm'n on Judicial Performance v. Fletcher, 686 So.2d 1075, 1077 (Miss.1996).
¶ 33. The Commission recommended that Judge Ellis Willard be removed from office and pay all costs associated with the prosecution of the complaint, totaling $9,084.66. Sanctions available to the Court include removal from office, suspension, fine and public censure or reprimand. The sanction imposed should be consistent with other like cases. Id. This Court notes the Commission's exceedingly strong language on this point in making its recommendation to remove Willard from office:
We would like to say that this sanction is consistent with like cases, fits the offence and satisfies the purpose of sanctions; there are however no cases of record in the state which in any way compare to Willard's continuous pattern of egregious behavior. A review of other cases warranting the removal of a judicial officer for judicial misconduct reflects that the Respondent's outrageous conduct far exceeds that of most any other judge who has been before this honorable Court. Removal and costs therefore certainly fit the offenses of the Respondent and adhere to the purpose of sanction. In re Kneifl, 217 Neb. 472, 351 N.W.2d 693 (1984); The Mississippi Bar v. Hall, 612 So.2d 1075 (Miss.1992); Mississippi Comm'n on Judicial Performance v. Gunn, supra; Mississippi Comm'n on Judicial Performance v. Underwood, 644 So.2d 458 (Miss.1994).
A review of recent cases in which judges were removed from office gives credence to the Commission's position. See Mississippi Comm'n on Judicial Performance v. Spencer, 725 So.2d 171 (Miss.1998); Mississippi Comm'n on Judicial Performance v. Dodds; 680 So.2d 180 (Miss.1996); Mississippi Comm'n on Judicial Performance v. Milling, 651 So.2d 531 (Miss.1995); Mississippi Comm'n on Judicial Performance v. Chinn, 611 So.2d 849 (Miss.1992); Mississippi Judicial Performance Comm'n v. Hopkins, 590 So.2d 857 (Miss. 1991); Mississippi Judicial Performance *746 Comm'n v. Coleman, 553 So.2d 513 (Miss. 1989); In re Hearn, 542 So.2d 901 (Miss. 1989); In re Quick, 553 So.2d 522 (Miss. 1989); In re Stewart, 490 So.2d 882 (Miss. 1986); In re Garner, 466 So.2d 884 (Miss. 1985); In re [William] Anderson, 451 So.2d 232 (Miss.1984); In re Brown, 458 So.2d 681 (Miss.1984); In re [Lloyd] Anderson, 412 So.2d 743 (Miss.1982).
¶ 34. Judges are called upon to exemplify the highest standards of conduct in a variety of situations and "have a duty to conduct themselves with respect for those they serve, including the court staff and the litigants that come before them." Spencer, 725 So.2d at 178.
¶ 35. "Claim of ignorance of the duties of his office or negligence in carrying out those duties as a defense to judicial misconduct is tantamount to an admission by an accused judge that he does not possess the qualifications necessary to hold the office to which he has been elected." In re Collins, 524 So.2d 553, 557 (Miss.1987). Willard's conduct seems to have resulted from both ignorance of the law and a steadfast refusal to become more knowledgeable of the law and of the office to which he had been entrusted.
¶ 36. This Court is not bound by the Commission's recommendations, but we give them great weight since the Commission was able to observe the witness during the hearing and had the benefit of personal observation of the demeanor and attitude of the judge. In re Bailey, 541 So.2d at 1037. This Court, in upholding the standards as set out in the judicial canons, recognizes that we require our judges to be: "patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control." Miss.Code of Judicial Conduct Canon 3.

CONCLUSION
¶ 37. In order to maintain the integrity of the judiciary, this Court accepts and adopts the Commission's findings and concludes that Judge Ellis Willard is guilty of willful misconduct in office, willful and persistent failure to perform the duties of his office, and conduct prejudicial to the administration of justice, all within the meaning of Article 6, Section 177A of the Mississippi Constitution. Accordingly, this Court accepts and adopts the Commission's recommended sanctions and Ellis Willard is hereby removed from office as Sharkey County Justice Court Judge, Post 2, and assessed the costs of this proceeding, in the amount of $9,084.66.
¶ 38. The Clerk of this Court is directed to mail a copy of this opinion to the Sharkey County Board of Supervisors, and the Clerks of the Sharkey County Chancery, Circuit, and Justice Courts.
¶ 39. ELLIS WILLARD IS REMOVED FROM OFFICE AS SHARKEY COUNTY JUSTICE COURT JUDGE, POST 2, AND SHALL PAY THE COSTS OF THIS PROCEEDING IN THE AMOUNT OF $9,084.66.
PITTMAN, C.J., BANKS, P.J., SMITH, MILLS, WALLER AND DIAZ, JJ., CONCUR. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION. McRAE, P.J., NOT PARTICIPATING.
EASLEY, Justice, DISSENTING:
¶ 40. I respectfully dissent because I believe Justice Court Judge Ellis Willard was denied fundamental due process guaranteed by the United States Constitution as well as the Mississippi Constitution of 1890. Article 6, § 177A of the Mississippi Constitution of 1890, as amended, which established a Commission on Judicial Performance for the State of Mississippi does *747 not contain any provision authorizing that the Commission's duties may be delegated to a committee, master or other factfinder promulgated by Rule 8(c) of the Rules of the Commission on Judicial Performance. Rule 8(c) violates Willard's due process rights guaranteed under the Fourteenth Amendment of the U.S. Constitution and Article 3, § 14 of the Mississippi Constitution by denying him the opportunity to present his case to the full Commission. Judge Willard is being removed from the bench without being allowed to present his case to a majority of the Commission. A three-member panel of the Commission conducted a "show cause" hearing and filed its findings of fact and recommendations. A majority of the Commission did not observe a witness, did not hear or consider testimony, and was totally dependent upon the recommendation of a minority of the Commission in making the Commission's recommendation to this Court that Judge Willard shall be removed from office. Judge Willard deserves his right to a proper and full hearing before the entire Commission.
NOTES
[1] Although the Commission found that this conduct was "deplorable" and did not promote justice in the Sharkey County Justice Court, it dismissed Count 26 as not violative of any Canon of the Code of Judicial Conduct.