DICKINSON, Presiding Justice,
for the Court:
¶ 1. In this judicial-misconduct case, Chancellor D. Neil Harris abused his contempt powers, failed to recuse himself from contempt proceedings, and prevented those he charged with contempt from presenting any defense. This Court finds an appropriate sanction to be a public reprimand, a $2,500 fíne, and assessment of the costs of this proceeding in the amount of $200.
FACTS AND PROCEDURAL HISTORY
¶ 2. The facts precipitating this judicial-performance complaint are not in dispute. In 2010, the Mississippi Department of Human Services enlisted a private contractor — utilizing private process servers — to pursue child-support and paternity proceedings over which Judge Harris presided in the Sixteenth Chancery Court District. While presiding over these cases, Judge Harris obtained information that suggested some of the parties had not been properly served with process and that returns on the summonses were falsified. In response, Judge Harris instituted contempt proceedings against five process-servers, the owner of the private service company, and two notaries public.
¶ 3. On June 11, 2010, Judge Harris issued show-cause orders and subpoenas for process server Guy Jernigan and notary public Thomas Corey McDonald to appear on June 14, 2010. At that contempt hearing, Judge Harris found Jernigan and McDonald in civil contempt for failing to provide proper service as well as for filing and notarizing improper affidavits. Judge Harris ordered them to appear for sentencing on June 24, 2010.
¶4. At the sentencing hearing, Judge Harris also found Edwin Cheshire — Jerni-gan’s and McDonald’s employer — in civil contempt. Judge Harris imposed monetary sanctions and ordered the three men to write apology letters to the judges of the Sixteenth Chancery Court District. He also enjoined Jernigan and McDonald from serving process or notarizing documents in that district, and he ordered the weekend incarceration of all three men until they purged themselves of contempt. Thereafter, the individuals sought emergency relief from this Court.
¶ 5. On July 20, 2010, Judge Harris issued additional show-cause orders and subpoenas, this time for process-servers Shane Corr and Chris Lott; for Craig Wells, the owner of a process-serving company; and for notary public David Smith, ordering them to appear on July 27, 2010. At the hearing on July 27, Judge Harris found Corr, Lott, Wells, and Smith guilty of civil contempt for failure properly to serve process, as well as for filing and notarizing improper affidavits. He ordered them to appear on August 17, 2010, for sentencing, and he issued a subpoena for Rick Moon to appear at the sentencing hearing. At the August 17 sentencing hearing, Judge Harris found Lott, Corr, Wells, Smith, and Moon to be in direct *1141 criminal contempt, and he sentenced each offender to thirty days’ incarceration and a $100 fíne.
¶ 6. On August 24, 2010, Judge Harris issued a show-cause order for process-server Tracey Walker, ordering him to appear on September 24, 2010. At that hearing, Judge Harris found Walker in direct criminal contempt and sentenced him to thirty days in jail and a $1,000 fíne.
¶ 7. At each show-cause hearing, Judge Harris denied the defendants the procedural protections of due process. Specifically, Judge Harris refused to allow the defendants’ attorneys to speak or present a defense in any way. He also failed to recuse himself from any of the hearings, despite the fact that he was the citing judge in all cases.
¶ 8. On September 9, 2010, this Court denied the emergency relief sought by Jer-nigan, McDonald, and Cheshire, but found that the individuals should have been cited for constructive criminal contempt rather than civil contempt. We directed Judge Harris to comply with this Court’s dictate in Cooper Tire & Rubber Company v. McGill, which held that a person charged with constructive criminal contempt is entitled to procedural safeguards, including the recusal of the citing judge.[1]
¶ 9. We vacated Judge Harris’s orders against Corr, Lott, Wells, Smith, Moon, McDonald, Jernigan, and Cheshire, finding that all of the orders violated the defendants’ procedural due-process rights. We remanded those cases to the trial court with orders for Judge Harris to recuse himself, which Judge Harris already had done by the end of September 2010. Tracey Walker’s case was not appealed.
¶ 10. Acting on complaints by David Smith and attorney John M. Colette, the Mississippi Commission on Judicial Performance instituted the present proceedings by formal complaint, charging Judge Harris with willful misconduct and conduct detrimental to the administration of justice which brings the judicial office into disrepute in violation of Section 177A of the Mississippi Constitution of 1890 and Canons 1, 2A, 3B(1), 3B(4), and 3(E)(1)(a) of the Mississippi Code of Judicial Conduct. Judge Harris answered the complaint, after an extension of time, on January 10, 2011.
¶ 11. The Commission and Judge Harris submitted an Agreed Statement of Facts and Proposed Recommendation. The Commission filed its findings and recommendation with this Court, recommending that Judge Harris be publicly reprimanded, fined $2,500, and assessed costs of this proceeding in the amount of $200.
ANALYSIS
¶ 12. This Court has the sole authority to impose sanctions for judicial misconduct.[2] When reviewing a judicial-misconduct complaint, we conduct a de novo review, “giving great deference to the findings, based on clear and convincing evidence, of the recommendations of the Mississippi Commission on Judicial Performance.” [3] When determining an appropriate sanction, we have held that we will conduct “an independent inquiry of the record” and render an independent judgment.[4] But when “the judge and Commis *1142 sion agree on the facts, [this Court] ordinarily will accept the findings as true.”[5]
I. Whether Judge Harris committed misconduct.
¶ 13. Judge Harris, while acting as chancellor, held five process-servers, a company owner, and two notaries public in contempt for alleged false returns on summonses and false notarizations. Then, after ordering show-cause hearings in each case, Judge Harris failed to provide the due-process procedural safeguards we enumerated in Cooper Tire.[6] During several show-cause hearings, Judge Harris refused to allow the defendants’ attorneys to speak or otherwise defend them clients. Judge Harris also failed to recuse himself from the hearings, even though he was the citing judge in all cases. Judge Harris agreed with the Commission’s findings and joined the Commission’s motion for approval of recommendations.
¶ 14. Though great deference is given to the Commission’s findings, it is ultimately this Court’s responsibility to decide whether the conduct of a judge constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, pursuant to Section 177A of the Mississippi Constitution.[7] This Court has held that willful misconduct in office is:
the improper or wrong use of power of his office by a judge acting intentionally or with gross unconcern for his conduct and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith....
Willful misconduct in office of necessity is conduct prejudicial to the administration of justice which brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.[8]
¶ 15. This Court also has noted that a judge may “through negligence or ignorance not amounting to bad faith, behave in manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.”[9] We have further explained that “misconduct does not have to be embedded in any form of bad behavior” — ignorance and incompetence can amount to conduct that violates Section 177A of the Mississippi Constitution.[10]
*1143 ¶ 16. The procedural safeguards that Judge Harris failed to observe apply only to constructive contempt cases.[11] Constructive criminal contempt is based on an act that “occurred ‘in whole or in part ... outside the presence of the judge.’ ”[12] Judge Harris held five process-servers, a company owner, and two notaries public in direct criminal contempt for alleged false returns on summons and false notarizations of summons. Because these acts all occurred outside the presence of the judge, they resulted in constructive criminal contempt, not direct criminal contempt.
¶ 17. In Mississippi Commission on Judicial Performance v. Darby, Judge Darby held a mother in contempt for failing to comply with her order to obtain insurance for her child.[13] Judge Darby failed to comply with the procedural safeguards which require providing specification of the charges, notice, and a hearing to individuals cited for constructive contempt, and she did not recuse herself from the show-cause hearings.[14] We held that her conduct violated the Canons of the Code of Judicial Conduct and was actionable as provided in Section 177A of the Mississippi Constitution.[15]
¶ 18. A judge who abuses the court’s contempt power violates Canons 1 and 2A of the Code of Judicial Conduct.[16] In Mississippi Commission on Judicial Performance v. Gunter, a judge held a mother in contempt and ordered community service hours because her daughter missed court, even though the court had been notified of the absence.[17] We held that the judge’s abuse of contempt power violated Canons 1 and 2A of the Code of Judicial Conduct. Likewise, by abusing his contempt power, Judge Harris violated Canons 1 and 2A of the Code of Judicial Conduct.
¶ 19. Canon 3B(2) of the Code of Judicial Conduct requires a judge to be faithful to the law. This Court previously has found that a judge’s failure to recuse himself in a constructive criminal contempt case was a violation of the judge’s duty to be faithful to the law.[18] Under the same circumstances, Judge Harris failed to re-cuse himself and thus violated Canon 3B(2).
¶ 20. Canon 3B(4) requires judges to be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom they deal in their official capacities. Judge Harris prevented the defendants’ attorneys from presenting any defense or speaking at all during their show-cause hearings. Such behavior is not courteous to the litigants or lawyers and is likewise in violation of Canon 3B(4).
¶ 21. Lastly, Canon 3E(l)(a) requires a judge to recuse himself in proceedings in which his impartiality might *1144 reasonably be questioned because the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. Similarly, Canon 3(B)(1) requires a judge to hear and decide all cases, except those in which disqualification is required. This Court has held that it is “necessary” for a person charged with constructive contempt “to be tried by another judge” because “the trial judge has substantial personal involvement in the prosecution.’ ”[19] Judge Harris was personally involved in the litigation that formed the basis for the contempt citations. Judge Harris was the citing judge, so he was required to recuse himself from the show-cause hearing.[20] And since he did not do so, he violated Canon 3E(l)(a).
¶ 22. Because Judge Harris violated Canons 1, 2A, 3B(1), 3B(2), 3B(4), and 3E(l)(a) of the Code of Judicial Conduct, and because we find the violations amounted to willful misconduct in office, the Mississippi Constitution authorizes this Court-upon receiving a recommendation from the Mississippi Commission on Judicial Performance-to decide his punishment.[21] The Commission has recommended that Judge Harris be publicly reprimanded, fined $2,500, and assessed costs of this proceeding in the amount of $200. Judge Harris agrees with the Commission’s recommendation. It now falls to this Court to determine whether the recommendation is appropriate.
II. The Commission’s recommended punishment is appropriate.
¶ 23. The sanctions in judicial-misconduct cases should be proportionate to the judge’s offense.[22] To determine whether the recommended sanctions are proportionate to the offense, this Court follows a six-factor test, which includes: “(1) the length and character of judge’s public service; (2) whether there is any prior caselaw on point; (3) the magnitude of the offense and the harm suffered; (4) whether the misconduct is an isolated incident or evidences a pattern of conduct;” (5) whether the conduct was willful, intended to deprive the public of assets, or if it exploited the judge’s position; and “(6) the presence or absence of mitigating or aggravating factors.”[23]
A. The length and character of Judge Harris’s public service
¶ 24. Judge Harris has been Chancellor of the Sixteenth Chancery Court District since 2006. Prior to his election as chancellor, Judge Harris served as a part-time family master by appointment of the Mississippi Supreme Court. Judge Harris frequently participates in seminars related to the judiciary. He has attended seminars sponsored by the Mississippi Judicial College, the Mississippi Department of Human Services, and the National Judicial College in Reno, Nevada. Judge Harris served as a facilitator at the National College in 2011 and facilitator and faculty member in 2012 and plans to participate again in 2013. Additionally, Judge Harris is working to create a Court Therapy Dog Program. Judge Harris provides services to his community, including church activities, Boy Scouts, and the Lions Club. Finally, Judge Harris is a member of the United States Coast Guard Auxiliary.
*1145 B. Whether there is any prior case-law on point.
¶ 25. Several cases illustrate the severity of a judge’s abuse of his contempt power. The judge in Byers was charged with judicial misconduct for abuse of her contempt power.[24] Judge Byers held Cynthia Jeffries, a newspaper reporter, in direct contempt for disobeying an order not to publish an article concerning a juvenile proceeding.[25] In holding Jeffries in contempt, Judge Byers had no affidavit and no show-cause hearing, and she provided no opportunity for Jeffries to present witnesses or evidence.[26] We held that Judge Byers violated Jeffries’s procedural due-process rights,[27] and based on this abuse of contempt power-coupled with five other charges of misconduct-we ordered that Judge Byer be publicly reprimanded, pay a fine of $1,500, and pay costs of $2,023.59.
¶26. And the judge in Mississippi Commission on Judicial Performance v. Willard committed multiple counts of judicial misconduct, three of which concerned abuse of contempt power.[28] Judge Willard held clerks in contempt for administrative irregularities and for failing to pull files he requested.[29] Judge Willard failed to provide the clerks with any procedural due process[30] by not issuing affidavits, warrants, or any notice.[31] Because “[all] the rudiments of due process are required before a person can be held in contempt of court,”[32] we found that Judge Willard’s conduct violated Canons 1, 2A, 3A(1), 3B(1), bringing into play Section 177A of the Mississippi Constitution.[33] Although the Code of Judicial Conduct has been revised since our holding in Willard, Canons 1, 2, and 3 remain substantially the same. Based on this misconduct, and a history of egregious behavior, Judge Willard was removed from office.
¶27. Several cases explain that it is improper for a judge to have a poor demeanor or be impatient with litigants or attorneys. In Mississippi Commission on Judicial Performance v. Spencer, Judge Spencer was charged with several acts of misconduct, including poor demeanor.[34] This Court stated that judges have a duty to respect the staff and litigants that come before them.[35] Further, this Court determined that “outrageous, erratic conduct and hostile demeanor” resulted in conduct that was prejudicial to the administration of justice bringing the judicial office into disrepute.[36]
¶ 28. Additionally, we found the judge in Mississippi Commission on Judicial Performance v. Smith was “confrontational and discourteous” to two attorneys and a bail bondsman while in court.[37] We determined this misconduct warranted public reprimand, a $1,000 fine, and costs in the amount of $100.
*1146 ¶ 29. Finally, we also have found that judges’ failure to recuse themselves when necessary violates proper judicial conduct. For instance, the judge in Darby did not recuse herself from presiding over constructive-contempt proceedings, even though she was the citing judge.[38] We found that Judge Darby’s abuse of her contempt powers — coupled with her failure to recuse herself — warranted a public reprimand, $500 fine, and assessment of costs totaling $100.[39]
¶ 30. Because Judge Harris failed to recuse himself from the show-cause hearings and refused to allow the parties charged with contempt to present evidence in defense of the charges, he clearly abused his contempt power, resulting in the violations of the Code of Judicial Conduct discussed above.
C. The magnitude of the offense and the harm suffered
¶ 31. As result of Judge Harris’s conduct, five process-servers, a company owner, and two notaries public were held in contempt. All except Walker were arrested and processed by law-enforcement officials and released on bond pending appeal. Walker did not post an appeal bond and was incarcerated for forty-eight hours. Further, by threatening the attorneys with contempt if they attempted to argue on behalf of their clients at the show-cause hearings, Judge Harris prevented the individuals from defending themselves.
D. Whether the misconduct is an isolated incident or evidences a pattern of conduct.
¶ 32. Judge Harris has no previous violations. And, although there are several counts of misconduct in this case, we find they arose out of the methods of service of process by a private contractor employed by the Department of Human Services, and that all of incidents occurred during the period of June 11, 2010, through August 24, 2010. Accordingly, we find they do not evince a pattern of misconduct, but combine to form an isolated incident.

E.Whether the conduct was willful, intended to deprive the public of assets, or if it exploited the judge’s position.

¶ 33. In Mississippi Comm’n on Judicial Performance v. Skinner, this Court modified the moral turpitude factor to consider instead “the extent to which the conduct was willful, and the extent to which the conduct exploited the judge’s position to satisfy his or her personal desires or was intended to deprive the public of assets or funds rightfully belonging to it.”[40] To determine the extent to which the conduct was willful, “we will examine ‘whether the judge acted in bad faith, good faith, intentionally, knowingly, or negligently.’ ”[41]
¶ 34. Applying this standard in Skinner, we held that Judge Skinner acted willfully when, after recusing himself from a case, he reinserted himself by issuing an arrest warrant for contempt of court based on an alleged violation of a no-contact order in the case. We found that Judge Skinner “was aware, or should have been aware, of the due process protections a contempt charge carries, and he was aware of the fundamental principle that, once recused, a judge must not take further *1147 action in a case.”[42] We also found such actions “were not the product of provocation or a spontaneous decisions,” as Judge Skinner had time to consider probable cause to issue an arrest warrant.[43]
¶ 35. Here, Judge Harris was aware or should have been aware of the due-process protections a contempt charge carries. Furthermore, Judge Harris’s actions were not spontaneous, but rather occurred over a period of several months. But we also find that his conduct was provoked, at least in part, because he began charging individuals with contempt after having to reset 641 of 1,601 cases in which he believed that service of process was improper. And we find no evidence that Judge Harris committed any act for personal gain or to satisfy personal desires. To the contrary, we find Judge Harris believed the process-servers continually served improper—and in some cases, fraudulent—process, and that returns on some of the summonses were falsified. We find that Judge Harris was motivated by his desire to stop conduct he believed to be harmful to the judicial process.
F. The presence or absence of mitigating or aggravating factors.
¶ 36. Judge Harris entered into an Agreed Statement with the Commission, erasing the need for a hearing. He admitted that his conduct was improper. We have held that such contrite conduct serves as a mitigating factor.[44] Further, Judge Harris’s conduct was prompted by his belief that some process-servers in paternity and child-support proceedings were falsely notarizing the documents and falsely representing that they had served summonses. The Commission noted that, during the period of May 14, 2010, through Dec. 17, 2010, Judge Harris had 1,601 Department of Human Services cases on his docket, 641 of which were reset based on Judge Harris’s belief that process was improper. We find these circumstances to be mitigating factors.
CONCLUSION
¶ 37. Judge Harris violated Canons 1, 2A, 3B(1), 3B(2), 3B(4), and 3E(l)(a) of the Code of Judicial Conduct. After applying the appropriate factors to the facts of this case, we find the Commission’s recommendation, as agreed to by Judge Harris, is appropriate. We impose a sanction of a public reprimand, to be carried out as provided in Exhibit A to this opinion. We also order Judge Harris to pay a $2,500 fine and costs in the sum of $200.
¶ 38. JACKSON COUNTY CHANCERY COURT JUDGE D. NEIL HARRIS, SR., SHALL BE PUBLICLY REPRIMANDED, FINED $2,500 AND ASSESSED COSTS OF $200. THE PUBLIC REPRIMAND SHALL BE READ IN OPEN COURT BY THE PRESIDING JUDGE OF THE JACKSON COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT IN WHICH A JURY IS PRESENT AFTER THE ISSUANCE OF THIS COURT’S MANDATE, WITH JUDGE HARRIS IN ATTENDANCE.
WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, CHANDLER AND KING, JJ„ CONCUR. PIERCE AND COLEMAN, JJ., NOT PARTICIPATING.
*1148 EXHIBIT A
PUBLIC REPRIMAND FOR VIOLATION(S) OF CODE OF JUDICIAL CONDUCT

Case Style:

MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE v. JUDGE D. NEIL HARRIS
Case No. 2013-JP-00496-SCT

Date Mandate Issued:

Summary of the Facts: In 2010, the Mississippi Department of Human Services enlisted a private contractor — utilizing private process-servers — to pursue child-support and paternity proceedings over which Judge Harris presided in the Sixteenth Chancery Court District. While presiding over these cases, Judge Harris obtained information that suggested some of the parties had not been properly served with process and that returns on the summonses were falsified. In response, Judge Harris instituted contempt proceedings against five process-servers, the owner of the private service company, and two notaries public.
On June 11, 2010, Judge Harris issued show-cause orders and subpoenas for process-server Guy Jernigan and notary public Thomas Corey McDonald to appear June 14, 2010. At that contempt hearing, Judge Harris found Jernigan and McDonald in civil contempt for failing to provide proper service as well as for filing and notarizing improper affidavits. Judge Harris ordered them to appear for sentencing June 24, 2010.
At the sentencing hearing, Judge Harris also found Edwin Cheshire — Jernigan’s and McDonald’s employer — in civil contempt. Judge Harris imposed monetary sanctions and ordered the three men to write apology letters to the judges of the Sixteenth Chancery Court District. He also enjoined Jernigan and McDonald from serving process or notarizing documents in that district, and he ordered the weekend incarceration of all three men until they purged themselves of contempt. Thereafter, the individuals sought emergency relief from the Mississippi Supreme Court.
On July 20, 2010, Judge Harris issued additional show-cause orders and subpoenas, this time for process-servers Shane Corr and Chris Lott; for Craig Wells, the owner of a process-serving company; and for notary public David Smith, ordering them to appear July 27, 2010. At the hearing on July 27th, Judge Harris found Corr, Lott, Wells, and Smith guilty of civil contempt for failure to properly serve process, as well as for filing and notarizing improper affidavits. He ordered them to appear August 17, 2010, for sentencing, and he issued a subpoena for Rick Moon to appear at the sentencing hearing. At the August 17 sentencing hearing, Judge Harris found Lott, Corr, Wells, Smith, and Moon to be in direct criminal contempt, and he sentenced each offender to thirty days’ incarceration and a $100 fine.
On August 24, 2010, Judge Harris issued a show-cause order for process-server Tracey Walker, ordering him to appear September 24, 2010. At that hearing, Judge Harris found Walker in direct criminal contempt and sentenced him to thirty days in jail and a $1,000 fine.
At each show-cause hearing, Judge Harris denied the defendants the procedural protections of due process. Specifically, Judge Harris refused to allow the defendants’ attorneys to speak or present a defense in any way. He also failed to recuse himself from any of the hearings, despite the fact that he was the citing judge in all cases.
*1149 Findings of the Mississippi Supreme Court (Canons Violated): Judge Harris abused his contempt powers, failed to re-cuse himself from contempt proceedings, and prevented those he charged with contempt from presenting any defense. Likewise, it is clear Judge Harris violated Canons 1, 2A, 3B(1), 3B(2), 3B(4), and 3E(l)(a) of the Code of Judicial Conduct, and the violations amounted to willful misconduct in office in violation of Section 177A of the Mississippi Constitution.
Supreme Court’s Disposition: Judge Harris is to be publicly reprimanded, fined $2,500, and assessed costs in the sum of $200.

. Cooper Tire & Rubber Company v. McGill, 890 So.2d 859 (Miss.2004).

. In re Removal of Lloyd W. Anderson, Justice Court Judge, 412 So.2d 743, 746 (Miss.1982).

. Miss. Comm’n on Judicial Performance v. Sanford, 941 So.2d 209, 212 (Miss.2006).

. Miss. Comm’n on Judicial Performance v. Boone, 60 So.3d 172, 176 (Miss.2011) (quot *1142 ing In re Removal of Lloyd W. Anderson, Justice Court Judge, 412 So.2d 743 (Miss.1982)).

. Miss. Comm'n on Judicial Performance v. Smith, 78 So.3d 889, 891-92 (Miss.2011).

. Cooper Tire & Rubber Company, 890 So.2d at 868-69 (An individual cited with constructive contempt is afforded procedural due-process safeguards including specification of charges, notice, and a hearing, and the citing judge should recuse himself from conducting the contempt proceedings.).

. Sanford, 941 So.2d at 212-13.

. In re Quick, 553 So.2d 522, 524 (Miss.1989).

. Miss. Comm’n on Judicial Performance v. Boykin, 763 So.2d 872, 875 (Miss.2000) (quoting In re Anderson, 451 So.2d 232, 234 (Miss.1984)).

. In re Quick, 553 So.2d at 527 (quoting In re Stewart, 490 So.2d 882, 884 (Miss.1986)).

. Cooper Tire & Rubber Company, 890 So.2d at 868-69.

. Mississippi Comm’n on Judicial Performance v. Darby, 75 So.3d 1037, 1042 (Miss.2011).

. Darby, 75 So.3d at 1040.

. Id. at 1042-43.

. Id. at 1042. See also Miss. Comm’n on Judicial Performance v. Smith, 78 So.3d 889, 891-92 (Miss.2011).

. See Darby, 75 So.3d at 1037 (Miss.2011); Miss. Comm’n on Judicial Performance v. Gunter, 797 So.2d 988, 990 (Miss.2001); Miss. Comm’n on Judicial Performance v. Willard, 788 So.2d 736, 743 (Miss.2001); Miss. Comm’n on Judicial Performance v. Byers, 757 So.2d 961, 972 (Miss.2000).

. Gunter, 797 So.2d at 990.

. Darby, 75 So.3d at 1043.

. Cooper Tire & Rubber Co., 890 So.2d at 869 (quoting In re Williamson, 838 So.2d 226, 238 (Miss.2002)).

. Darby, 75 So.3d at 1043.

. Miss. Const. art. 6, § 177A.

. Boykin, 763 So.2d at 876.

. Miss. Comm'n on Judicial Performance v. Skinner, 119 So.3d 294, 300, 307 (Miss.2013).

. Byers, 757 So.2d at 963.

. Id. at 970.

. Id. at 970-71.

. Id. at 971-72.

. Willard, 788 So.2d at 738-39.

. Id. at 742.

. Id.

. Id.

. Id. (quoting Jeffery Jackson, Contempt of Court, Mississippi Civil Procedure § 16A:1 (1997)).

. Id. at 743.

. Miss. Comm’n on Judicial Performance v. Spencer, 725 So.2d 171 (Miss.1998).

. Id. at 178.

. Id.

. Smith, 78 So.3d at 892.

. Darby, 75 So.3d at 1043.

. Id. at 1044.

. Skinner, 119 So.3d at 307.

. Id. (quoting In re Coffey's Case, 157 N.H. 156, 949 A.2d 102, 115 (2008)).

. Skinner, 119 So.3d at 307.

. Id.

. Miss. Comm'n on Judicial Performance v. Thompson, 80 So.3d 86 (Miss.2012).