419 So.2d 145 (1982)
In re Inquiry Concerning a Judge, Justice Court Judge Otto A. BRANAN.
No. 53621.
Supreme Court of Mississippi.
August 11, 1982.
Rehearing Denied September 15, 1982.
Luther T. Brantley, III, Jackson, for Miss. Com'n on Judicial Performance.
Vance & Perrier, Travis T. Vance, Jr., Vicksburg, for Otto S. Branan.
Before SUGG, P.J., and HAWKINS and PRATHER, JJ.
SUGG, Presiding Justice, for the Court:
This matter is before the Court on recommendation of the Mississippi Commission on Judicial Performance made pursuant to Section 177A of the Mississippi Constitution of 1890.[1]
*146 The Commission found that the procedure used by respondent in collecting bad checks constituted, (1) Willful and persistent failure to perform the duties of his office, and (2) conduct prejudicial to the administration of justice which brings the judicial office into disrepute. The Commission unanimously recommended that this Court publicly reprimand respondent, fine him $1,000, and require him to make restitution of $3,489.68 collected by him from persons as civil damages in addition to court costs.
The Commission found that the evidence was sufficient to support a recommendation of removal from office but recommended lesser sanctions because of mitigating circumstances including, but not limited to, respondent's cooperation in the investigation, his acknowledgment of wrong doing, and his willingness to accept punishment.
Respondent states in his brief that he has neither objection nor defense to the findings of fact of the Commission and signed an agreed statement of facts.[2] He admits that he made serious errors in the conduct of his office as justice court judge and that such errors occurred because he had been instructed to seek advice from his experienced peers about the proper way to conduct his official duties. He admits that his actions were in violation of law but that he was following a procedure instituted by more experienced justice court judges in his county who had followed the same procedure for some years. Respondent is to be commended for cooperating fully with the Commission in the investigation and not attempting to cover up any action that he had taken. He expressed regret for his actions, assured the Commission that he had corrected his errors, and stated if he was allowed to continue as justice court judge, he would endeavor to bring honor and high esteem to the office. We agree with the Commission that he should not be removed from office.
Section 177A provides in part:
On recommendation of the commission on judicial performance, the supreme court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state ...
The first question is whether this Court may order restitution as recommended by the Commission. We answer the question no because restitution is not one of the sanctions permitted.
The next question is whether this Court may impose multiple sanctions under Section 177A. The use of the disjunctive "or" denotes a choice between alternatives. Webster's Third New International Dictionary (1967). In construing criminal statutes authorizing different sentences, we have recognized the common meaning of the disjunctive "or" as a choice between alternatives. Salter v. State, 387 So.2d 81, 84 (Miss. 1980); Bass v. State, 328 So.2d 665, 667 (Miss. 1976). In both of these cases we held that where permissible sentences are separated by the disjunctive, only one may be lawfully imposed. We conclude that Section 177A should be construed as if "or" was inserted between each sanction permitted. The section would then read:
The Supreme Court may remove from office or suspend or fine or publicly censure or reprimand ...
However, our examination of the question requires consideration of other provisions of section 177A which authorize this Court to impose sanctions on any justice or judge for:
(a) [A]ctual conviction of a felony in a court other than a court of the State of Mississippi; (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; (d) habitual intemperance in the use of alcohol or other drugs; or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
If the acts of the justice or the judge complained of constitute more than one of the proscribed categories of conduct, *147 (a) through (e), multiple sanctions may be imposed. However, if such conduct would only fall within one of the proscribed categories multiple sanctions may not be imposed. For example, if the conduct of the justice or the judge would only show a willful and persistent failure to perform his duties, only one sanction could be imposed because the sanctions are in the disjunctive as previously noted.
In this case the conduct of respondent constituted both (c) willful and persistent failure to perform his duties and (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute. Under the facts of this case, we conclude that multiple sanctions may be imposed.
We therefore follow the recommendation of the Commission, fine respondent $1,000 and publicly reprimand him. Because of the publicity already given to this case, we conclude that respondent has been publicly reprimanded and the public reprimand ordered by this Court shall consist of publication of this opinion in the Southern Reporter.
RESPONDENT FINED $1,000 AND PUBLICLY REPRIMANDED.
PATTERSON, C.J., WALKER, P.J., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.

APPENDIX A
Beginning on or about January 1, 1980, and continuing to on or about March 11, 1981, the Respondent engaged in the collection of "bad checks," i.e., checks which had been tendered to local merchants but which had been returned to those merchants by the payee bank because payment had been refused. These "bad checks" were given to Respondent for collection by various local merchants. The merchants would usually sign a criminal affidavit and the check would be attached to the criminal affidavit; this criminal affidavit was oftentimes blank. No entry was made in Respondent's official civil or criminal docket books, except that certain check collection cases were entered in a special civil docket number "1 1/2," and no prepayment of court costs and fees was made. Thereafter, Respondent referred said warrants for arrest to his Constable, Mike Ouzts. Generally, criminal warrants were issued by Respondent without the proper filing or docketing of a criminal matter. The warrants were placed in the possession of Ouzts and were used by him in connection with the collection procedure. No return was made on these criminal warrants. The makers of the "bad checks" were usually given an opportunity to contact the judge and pay off the check, plus "court costs," plus "civil damages" computed according to Mississippi Code Annotated, Section 11-7-12 (Cum.Supp. 1980). The amount collected for court costs was $25.00. Upon collection, the face amount of the check was to be repaid to the merchants who had submitted the check for collection. Respondent retained $15.00 of the costs for himself and paid $10.00 to the Constable. In certain instances civil summons were issued, with the same costs and damages imposed. No other record of the collection of these checks or the payment of the fees, court costs and damages described above was entered in Respondent's official docket book and no payment of fines, penalties or fees was ever made to Warren County, Mississippi, by Respondent with respect to the checks collected as hereinabove detailed, except that certain check collection cases were entered in a special civil docket number "1 1/2." Respondent did not collect criminal fines on said "bad checks;" the only monies collected were the amount of the check, "court costs" and "civil damages."
That statistically for Calendar Year 1980 Respondent's check collection activities, as determined by the Commission Investigator, were substantially as follows:

 Number of Checks Collected 286
 Face Amount of Checks Collected $8,546.04
 Damages Collected $3,673.08
 Court Costs Collected:
 Judge $3,410.00
 Constable $2,298.00
 Total Collections $17,927.12

*148 If there were "bad checks" collected in addition to those determined by the Commission Investigator's report, Respondent makes no representation as to any amount not included in said report.
NOTES
[1] Article 6, Mississippi Constitution of 1890, was amended by adding a new section designated as Section 177A proposed by House Concurrent Resolution 33 at the 1979 Regular Session of the Legislature and ratified by the electorate on November 6, 1979.
[2] Pertinent parts of the agreed statement of facts appear as Appendix A.