421 So.2d 1023 (1982)
In re Inquiry Concerning a Judge, Justice Court Judge Jerry V. LAMBERT.
No. 53879.
Supreme Court of Mississippi.
November 3, 1982.
Brunini, Grantham, Grower & Hewes, George P. Hewes, III, R. Wilson Montjoy, II, Jackson, for appellant.
Cumbest, Cumbest & Hunter, John L. Hunter, Pascagoula, for appellee.
En Banc.
PATTERSON, Chief Justice, for the Court:
Upon the recommendation of the Mississippi Commission on Judicial Performance pursuant to Section 177A of the Mississippi Constitution of 1890 and the consent of Judge Jerry V. Lambert, this matter is before the court for disciplinary adjudication.
The Commission found by clear and convincing evidence that:
"Judge Jerry V. Lambert took office in January, 1980, as the Justice Court Judge of Beat 3, Jackson County, Mississippi. Beginning on or about January 26, 1980, and continuing through September of 1980, Judge Lambert engaged in the collection of `bad checks,' i.e., checks which had been tendered to local merchants but which have been returned to those merchants by the payee banks because payment had been refused. These checks were brought to Judge Lambert's office by these local merchants with criminal affidavit attached, usually after statutory notice had been given to the maker of the bad check. Judge Lambert did not immediately docket these matters in his official docket book but rather entered them in a separate `red book' and issued a criminal warrant. After issuance of the warrant, constables under Judge Lambert *1024 attempted to collect the checks. If collection efforts were successful, restitution of the face amount of the check was made to the local merchant filing the complaint, and the matter was entered on Judge Lambert's official docket book. Court fees of at times $25.00 and at times $26.00 were also collected from those parties pleading guilty to bad check violations. Of the fee collected, $10.00 initially went to Judge Lambert, $5.00 went to his regular constable, Rodney Rayburn, and $10.00 went to one of the part-time constables charged with the responsibility of check collection. Later Rayburn was given $3.00 of every $25.00 collected and Judge Lambert retained $2.00 for rent and other overhead expenses for his constable. In none of these cases did Rayburn do anything with respect to check collection. In cases where $26.00 was collected as court costs, the extra $1.00 was collected for `library fees.' Until investigation by the Commission on Judicial Performance, those $1.00 fees had not been forwarded to Jackson County to support the county law library. In cases where check collection efforts were unsuccessful, the checks were returned to local merchants without any docket entry whatsoever. Further, no fine or other penalty was imposed upon a person convicted of passing `bad checks' in excess of the restitution of the face amount of the check to the local merchant and the payment of court costs. Even in cases where multiple bad check offenses occurred, no fines or other sanctions were imposed.
In May of 1980, Judge Lambert formed a business known as Check Services, Inc., which was operated out of his office of Justice Court Judge at 2526 Market Street, Pascagoula, Mississippi. Check Services, Inc., is not and has never been a duly qualified Mississippi corporation. Check Services, Inc., was operated as a `computerized check verification system.' Its services allowed a merchant to make a computer assisted search in order to determine whether the maker of a check had previously given `bad checks' which were then outstanding. A copy of the brochure distributed by Judge Lambert for Check Services, Inc., was attached as exhibit "B" to the formal complaint against Judge Lambert. In the brochure, Check Services, Inc., advertised that its `clients enjoy special discounts on collections because of our affiliation with the Justice Court Judge's Association, one of the largest and most reputable collection firms in this part of the country.' The brochure further advertised that `Check Services, enjoys the complete cooperation of banks, the police department and the district attorney's office in the areas we serve.' Check Services, Inc., was set up to be operated out of the same office as Judge Lambert's Justice Court and run by basically the same personnel. Additionally, the information acquired by Judge Lambert through the office of Justice Court Judge concerning the identities of persons with outstanding `bad checks' was critical to the success of Check Services, Inc."
The Commission found by clear and convincing evidence that respondent:
"(a) utilized the criminal process to collect civil debts; (b) failed to properly docket and process bad checks; (c) violated statutory provisions of the Mississippi Code respecting the jurisdiction of the justice court; (d) failed to properly collect and account for contributions to the county law library fund; (e) collected fees in excess of the statutory maximum and paid fees in excess of the statutory maximum to court officials; (f) had a pecuniary interest in the outcome of litigation filed in his court; and, (g) violated several Canons of the Code of Judicial Conduct of Mississippi Judges, including but not limited to Canons 1, 2A, 3B, and 5C."
The Commission further found by clear and convincing evidence certain mitigating circumstances as follows:
"These include, but are not limited to, Respondent's full and complete cooperation with the Commission in its investigation from the beginning, his expressed willingness to accept just punishment for *1025 any misconduct, his efforts to restructure the operation of his office in order to fully comply with the law and his attempt to rectify his errors."
The Commission found by clear and convincing evidence that "Respondent's conduct constitutes wilful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office in disrepute within the purview of Section 177A of the Mississippi Constitution of 1890."
Section 177A of the Mississippi Constitution of 1890 provides in part as follows:
On recommendation of the commission on judicial performance, the supreme court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: (a) actual conviction of a felony in a court other than a court of the State of Mississippi; (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; (d) habitual intemperance in the use of alcohol or other drugs; or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute; ...
By unanimous vote of the Commission and agreement of the respondent, it is recommended to this Court that Jerry V. Lambert be publicly reprimanded and fined $2,000.00.
The question previously before the Court was whether the foregoing section of the Constitution permitted multiple sanctions of fine and public reprimand where the sanctions are divided by the disjunctive "or."
The question has since been decided in the case of In Re Branan, 419 So.2d 145, 146 (Miss. 1982), wherein we concluded that "Section 177A should be construed as if `or' was inserted between each sanction permitted." We further concluded that "[i]f the acts of the justice or judge complained of constitute more than one of the prescribed categories of conduct, (a) through (e), multiple sanctions may be imposed." 419 So.2d at 146.
In this case respondent's conduct constituted (c) willful and persistent failure to perform his duties and (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute, therefore, multiple sanctions may be imposed against respondent.
We therefore follow the recommendation of the Commission, by fining respondent $2,000 and publicly reprimanding him by publication of this opinion in the Southern Reporter.
RESPONDENT FINED $2,000.00 AND PUBLICLY REPRIMANDED.
SUGG and WALKER, P.JJ., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.