PIERCE, Justice,
for the Court:
¶ 1. The Commission on Judicial Performance filed a formal complaint on November 12, 2013, against Rickey W. Thompson, Justice Court Judge, District 4, Lee County, Mississippi, charging him with judicial misconduct constituting violations of Canons 1, 2(A), 2(B), 3(B)(1), 3(B)(2), 3(B)(4), 3(B)(8), 3(C)(1), and 3(C)(2) of the Code of Judicial Conduct and constituting willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute in violation of Section 177A' of the Mississippi Constitution of 1890, as amended. The formal complaint was comprised of four separate charges:
a. Count One related to Inquiry No. 2013-104 regarding the consolidation of two complaints arising from contempt of court proceedings initiated by Judge Thompson against two deputies of the Lee County Sheriffs Department in the time frame April 29-July 18, 2013, for the deputy’s failure to sign and serve a particular bond form directed by Judge Thompson as Justice Court Judge in error on Judge Thompson’s part.
b. Count Two related to Inquiry No. 2013-131 regarding a complaint arising from Judge Thompson’s conduct with regard to a bail bondsman in the Lee County Justice Court.
c. Count Three related to Inquiry No. 2013-166 regarding a complaint arising from Judge Thompson’s handling of a Lee County Justice Court Drug Court matter involving K.F.[1] and her retained attorney, Janelle Lowrey.
d. Count Four related to other allegations of violations by Judge Thompson involving the Lee County Justice Court drug court revealed during the course of the investigation, including (a) multiple participants in the Drug Court in excess of two years in violation of Mississippi Code Section 99-15-26; (b) many participants in the Drug Court incarcerated for long periods of time for “violations” of the drug court policy without affidavit or petition and without proof being presented to the Drug court that an actual violation had occurred; (c) Judge Thompson received and enrolled participants from other court systems that did not have a drug court, even after receipt of an October 19, 2012, Attorney General’s opinion that such practice did not comport with Mississippi Code Section 9-23-15(2); (d) Judge Thompson signed and filed false reports with the AOC that inflated the number of drug court participants; and (e) Judge Thompson instructed drug court personnel to refuse to cooperate with the Commission and to conceal documents sought by the Commission pursuant to subpoena.
¶ 2. Judge Thompson did not file an answer to the formal complaint but requested a hearing. Initially, the Commission had considered seeking an interim suspension of Judge Thompson from his duties as a Lee County Justice Court Drug Court judge during the pendency of these proceedings. But after the director of the Administrative Office of Courts (AOC) had advised Judge Thompson that the certification of the Lee County Justice Court Drug Court had expired, an agreement was memorialized in an Order Setting Aside Order to Show Cause, which was filed on December 13, 2013. That order required, in pertinent part, that Judge Thompson cease operation of the Lee County Justice Court Drug Court and *861 cease any efforts to recertify the drug court during the pendency of the formal complaint. Judge Thompson also agreed to recuse himself from hearing any cases involving the Lee County Sheriffs Department and Attorney Janelle Lowrey during the investigation and formal hearing process with the Mississippi Commission on Judicial Performance and was ordered to sign any orders necessary to discharge the remaining participants from the drug court and, if proper, expunge their records.
¶ 3. This matter subsequently came for hearing on March 5 and 6, and May 7 and 8, 2014, in the Office of the Mississippi Commission on Judicial Performance in Jackson, Mississippi, before a panel committee.[2] Judge Thomspon was represented by counsel. Fourteen witnesses, along with Judge Thompson, appeared and provided testimony.
¶ 4. Having heard and considered the evidence, the committee filed its Findings of Facts and Conclusions of Law and Recommendations on July 18, 2014. The committee voted 2-1 to recommend that Judge Thompson be removed from office and assessed a $3,500 fine plus costs of $7,693.38. Commission counsel filed objections to those findings on July 28, 2014, and Judge Thompson filed his objections on July 31, 2014.
¶ 5. Thereafter, the Commission considered the committee’s findings and recommendations. The Commission unanimously adopted the committee’s findings of fact and conclusions of law. The Commission then voted 5-2 to adopt the committee’s recommendation that Judge Thompson be removed from office and assessed a $3,500 fine plus costs of $7,693.38.
FINDINGS OF FACTS
Count One
¶ 6. On April 29, 2013, Officer Lance Miller, a deputy with the Lee County Sheriffs Department, was assigned to provide security for the Lee County Justice Court building by screening individuals upon entering the building; Officer Miller was positioned at a door, not in a courtroom. On that date, Judge Thompson was presiding over a protective-order hearing in a domestic-violence matter in open court. Instead of using a bonding condition form designed for use in domestic-violence cases by a judge in open court, which has signature lines for the judge and a defendant, Judge Thompson used and made notations in error on a different bonding condition form that was intended for use by a law-enforcement officer at the scene of a domestic-violence ease, which indicates the officer has telephoned a judge to determine what bond amount and/or what conditions should be set. The form Judge Thompson used contained signature lines for an officer/deputy and for a defendant.
¶ 7. Not recognizing the error in his selection of the bonding condition form, Judge Thompson made notations on the form (the one that was not intended for use in court) and sent a justice-court deputy clerk from the hearing out of the courtroom to have Officer Miller sign and serve the bonding condition form. Officer Miller informed the clerk that he was not willing to sign the paper presented, as he had never seen that form before. Officer Miller went to the courtroom where Judge Thompson was still on the bench and spoke to Judge Thompson about the form. Officer Miller then stepped outside to call *862 his supervisors, since he was not familiar with the piece of paper presented. After reciting the contents of the form, Officer Miller was advised by his supervisors not to sign the form.
¶ 8. Later, Officer Miller spoke to Judge Thompson and was questioned by Judge Thompson about his refusal to sign the form, and Officer Miller informed the judge he did not sign the form under the advice of his supervisor. Judge Thompson informed Officer Miller he was going to start contempt proceedings against Officer Miller. Judge Thompson initiated contempt proceedings against Officer Miller by issuing and serving a subpoena on May 6, 2013, for Officer Miller to appear on June 19, 2013, for a show-cause hearing on a contempt of court. John Hall, chief deputy for the Lee County Sheriffs Department, was also served with a subpoena on May 6, 2013, ordering him to appear on June 19, 2013, and give testimony in the matter. No affidavit or pleading was filed by Judge Thompson at that time setting forth the charges against Officer Miller other than the subpoena to “show cause of Contempt of Court of Judges [sic] orders.”
¶ 9. On or about May 8, 2013, Judge Thompson participated in a telephone conference that included Lee County Prosecutor James Moore and the investigator for the Mississippi Commission on Judicial Performance, Ralph Holiman, to discuss the issuance of the subpoenas to the deputies and the circumstances surrounding the potential for contempt. Moore and Holi-man explained to Judge Thompson that the two forms designed by the Office of the Attorney General were for use in domestic-abuse cases and the intended uses of those forms. Thereafter, on May 8, 2013, Judge Thompson signed a “Motion to Rescind Orders for Subpoenas” directed to Debbie Berryman, the justice-court clerk, in which he purported to rescind all “documents related to the Subpoenas for Contempt of Court Probable Cause Hearing of Defendant Lance Miller and the Witness Subpoena of John Hall.” Judge Thompson further directed that Officer Miller and Officer Hall be advised that the hearing scheduled for June 19, 2013, would not be held.
¶ 10. Because they were still uncertain as to the resolution of the contempt issue, Officers Miller and Hall appeared with counsel before Judge Thompson on June 19, 2013, and requested an order dismissing the matter. On July 18, 2013, Judge Thompson signed the order submitted by the attorney for Officers Miller and Hall, dismissing the contempt-of-court matter with prejudice.
¶ 11. Notwithstanding the May 8, 2013, conference call among Judge Thompson, Lee County Prosecutor Moore, and the investigator for the Mississippi Commission on Judicial Performance regarding the separate use of the two bonding condition forms and the appearance by Miller with counsel on June 19, 2013, to resolve the contempt issue, and notwithstanding the submission and entry of an order on July 18, 2013, that the matter of contempt by Deputy Miller was “dismissed with prejudice” on July 18, 2013, Judge Thompson signed an “Affidavit of Indirect Contempt of Court” stating that Deputy Miller was “in indirect contempt of this court by refusing to obey the order of said Justice Court Judge” for failing to serve a “Notice of Bond with Conditions Issued,” as directed on April 29, 2013.
¶ 12. Since no final action was taken by Judge Thompson on the contempt proceedings against Officer Miller, the Commission did not find, by clear and convincing evidence, that Judge Thompson had abused the court’s contempt power. Accordingly, the Commission found no viola *863 tion as to Count One of the formal complaint.
Count Two
¶ 13. Sheriff Johnson testified that, on or about June 19, 2013, he was in Judge Thompson’s courtroom for a hearing, and he observed Christopher L. Hoyle, a licensed bail-bond agent, sitting inside the courtroom bar near the bench, in an area normally reserved for court personnel. Sheriff Johnson testified that when a defendant was fined or otherwise sentenced, Hoyle would approach the bench, Judge Thompson would hand him the file, and Hoyle would take the defendant and the file outside the courtroom.
¶ 14. Hoyle is a bail bondsman and has a probation company for which he serves as a probation officer. Hoyle is not an employee of the Lee County Justice Court, but he testified he served as a “volunteer probation officer” in the Lee County Justice Court and the drug court. Hoyle testified he “hung around justice court to help with the drug court” and that he routinely would sit in Judge Thompson’s court in “the probation area seats.”
¶ 15. During 2013, Hoyle was suspended from writing bonds at the Lee County Jail by Johnson after complaints were received regarding Hoyle’s business practices. Hoyle or the bonding company he worked for had been suspended from writing bonds on previous occasions. Following the suspension, Hoyle and Judge Thompson appeared at Sheriff Johnson’s office to inquire about the suspension of Hoyle’s privileges. Sheriff Johnson testified that Judge Thompson spoke to him on Hoyle’s behalf in an attempt to have the suspension lifted. Although Hoyle testified that Judge Thompson had accompanied him only as a friend for “moral support,” the Commission found that Hoyle’s testimony that Judge Thompson did not speak at all during the meeting was disingenuous and not credible. The Commission found that, even if Judge Thompson did not speak to Sheriff Johnson, Judge Thompson’s presence at the meeting with Hoyle was an overt act to advance the private interests of Hoyle with the sheriff with the intent of having Hoyle’s suspension as a bail bondsman lifted.
¶ 16. According to the Commission, the evidence established by clear and convincing evidence that Judge Thompson had lent the prestige of his office to advance the private interests of others (Hoyle, a friend and social companion), by appearing with Hoyle in a meeting with the sheriff and speaking on Hoyle’s behalf regarding his suspension from writing bail bonds. But the evidence did not establish by clear and convincing evidence that Judge Thompson had engaged in any impropriety by allowing Hoyle to handle case files or speak to defendants. Thus, there was no finding of a violation as to that aspect of the formal complaint.
Count Three
¶ 17. K.F. was arrested and charged with drunkenness in a public place by the Tupelo Police Department in May 2011, when K.F. was still a minor. Attorney Janelle Lowrey was hired to represent K.F., and on June 22, 2011, K.F.’s case was transferred to the Lee County Justice Court for prosecution and was assigned to Judge Thompson. On July 1, 2011, regarding K.F., Judge Thompson signed an order placing K.F. in the drug-court program. The order also was signed by K.F. and Lowery, as attorney for K.F. Thereafter, K.F. was a participant in the drug court.
¶ 18. K.F. was admitted in the drug-court program on July 1, 2011, and was fisted as still in the drug-court program as a “current case” at the time it ceased *864 operation in October 2013, which was a period longer than two years.
¶ 19. During her drug-court participation, K.F. was arrested and incarcerated several times, in August 2011 and June 2012, for alleged contempt of court for “failure to comply with drug[-]court order.” She was incarcerated in the Lee County jail August 3-9, 2011, a total of six days; and in the Lee County jail, June 12-28, 2012, a total of sixteen days.
¶ 20. During the time that K.F. was in the drug-court program, Lowrey wrote letters directed to the drug court stating that Lowrey was an attorney representing K.F. In June 2012, Lowrey was retained as counsel to represent K.F. When Lowrey inquired of the drug-court personnel about the June 12, 2012, incarceration of K.F., Lowrey was informed she must place something in the file regarding her representation of K.F. Lowrey prepared a letter signed by K.F. authorizing the drug-court personnel to communicate with Low-rey, her attorney, regarding her case. The letter was submitted to the drug court on June 14, 2012. On June 15, 2012, K.F. was brought before Judge Thompson for a hearing following her arrest and incarceration beginning June 12, 2012. When Low-rey approached the bench to represent her client, Judge Thompson refused to allow Lowrey to speak on KF.’s behalf. Low-rey testified that Judge Thompson threatened to hold Lowrey in contempt if she did not sit down. The Commission found Lowery’s testimony credible. Instead of allowing K.F. to be represented by her retained counsel, Lowrey, at the hearing, Judge Thompson recognized only a volunteer public defender, who had been recruited by Judge Thompson to speak for K.F., even though the volunteer had not met with K.F. before the hearing.
¶ 21. The Commission found that the evidence established by clear and convincing evidence that K.F. was denied her right to counsel of her choosing. The evidence did not establish that Judge Thompson interfered with KF.’s medical treatment or violated her right to privacy by sharing medical records with someone who was not a treatment provider. Also, the evidence did not establish that Judge Thompson had deprived KF. of any right to obtain treatment of her choosing, and there is no finding of a violation as to that aspect of the formal complaint.
Count Four
¶ 22. The Commission found that testimony and documentary evidence presented clearly established that participants in the drug-court program, for which Judge Thompson served as the sole judge, were routinely kept in the program for more than two years. The testimony established that Judge Thompson was aware of how long each participant had been in the drug-court program. By way of example, the evidence established that participant S.S. was admitted to the drug-court program on September 17, 2010, was still in the program in early 2013, and was listed as a “current case” in September 2013. Participant A.M. was admitted to the drug-court program on August 7, 2009, and was still in the program in 2013. Several exhibits established participants remained in the drug court for more than two years.
¶23. In his defense, Judge Thompson argued that he relied on the AOC website, which did not clearly identify a two-year requirement. The Commission, however, found that the website merely contains general information concerning drug courts as a whole and does not distinguish between felony (circuit/county) and misdemeanor (justice/municipal) courts. Mississippi Code Section 99-15-26(2)(a)(v) is the controlling authority with which Judge Thompson should have complied. Section *865 99-15-26(2)(a) provides, in pertinent part, that:
(iv) Successful completion of drug, alcohol, psychological or psychiatric treatment, successful completion of a program designed to bring about the cessation of domestic abuse, or any combination thereof if the court deems such treatment necessary.
(v) The circuit or county court, in its discretion, may require the defendant to remain in the program subject to good behavior for a period of time not to exceed five (5) years. The justice or municipal court, in its discretion, may require the defendant to remain in the program subject to good behavior for a period of time not to exceed two (2) years.
Miss.Code Ann. § 99 — 15—26(2)(a) (Rev. 2007). •
¶ 24. Judge Thompson argued that Section 99-15-26(a)(v) may not have been operative during the time period at issue because the statute underwent amendments in 2012. The Commission rejected this argument, noting that the code section underwent changes to subsections (1) and (2) to add language regarding domestic abuse, but the text of subsection (2)(a)(v), with the pertinent language of the two-year time limitation for a drug, alcohol, psychological, or psychiatric treatment program, has been unchanged from 2004 until the present. The Lee Count Justice Court Drug Court began operation in 2009, after the text of subsection (2)(a)(v) was operative.
¶ 25. The Commission found by clear and convincing evidence that Judge Thompson did not comply with Section 99-15 — 26(2)(a) when he kept numerous participants in the Lee County Justice Court Drug Court in excess of two years. Evidence clearly established that participants in the drug-court program were arrested and jailed for “contempt of orders of the drug court.” By way of example, in addition to that noted above regarding K.F., the evidence established that participant T.L., who was held in the program for three years and four months, was jailed on at least four separate occasions (which totaled more than six months in jail for violations or failures to comply with drug-court orders) which were deemed contempt of court. The evidence also established participant S.S. was jailed several times, with one period of twenty-four days in jail, for unspecified violations or failures “to comply with drug court,” deemed contempt of court. In some instances, the records indicate bench warrants were issued for a participant’s failure to appear at a monthly meeting. The evidence established other examples of arrest warrants signed by Judge Thompson and incarceration of drug-court participants for contempt of court for failing to comply with unspecified directives of the drug court.
¶ 26. Participants were jailed for drug-court “violations” even though the participants were in the drug-court program for offenses that were not punishable with jail time or were not felony offenses. For example, regarding T.L., previously mentioned as being kept in the program for more than three years, Judge Thompson ultimately had him jailed at the end of that time for six months on the underlying charge of first-offense simple possession of marijuana in violation of Section 41-29-139(2)(A), a charge which, by statute, carries no possibility of jail time, and an additional six months for “contempt of court, failure to complete drug court.” The county prosecuting attorney expressed to Judge Thompson his concern that participants in the drug-court program for whom the underlying offenses were not punishable by jail time were being jailed for not being compliant with *866 “whatever requirements [the judge] or the counselors were putting on them.”
¶ 27. Participants were jailed routinely for violations that were discussed at “staffing meetings” just prior to monthly drug-court sessions. The drug-court participants were not present at the staffing meetings, which began at 9:00 a.m. Although a volunteer public defender was present at the “staffing meetings,” no affidavits or sworn evidence appear to have been presented in a hearing for which the participant received prior notice, and participants were not provided with adequate due-process hearings. The volunteer public defender testified, in response to questioning about how it would be determined in staffing what sanctions should be imposed, that they would “generally discuss the violation, how serious the violation was” and that any discussion or arguments of jail time if the participants were “deemed [sic]- committed that particular violation” were made “in staffing.” The volunteer public defender testified his involvement in the drug court “was limited to the staffing and drug court day.” Nor were participants notified in writing of the specific violations, as Judge Thompson apparently called the matters for hearing at the drug-court session at 11:00 a.m. As Judge Thompson testified:
Q. . Do you sometimes incarcerate people right there in the courtroom?
A. If they’re in viola — if we find out from staffing there’s violations at the time.
The volunteer public defender also testified that “hearings” usually were held immediately after staffing meetings. Arresting documents charged “drug court violation” or “contempt of court failure to comply with drug court.”
¶ 28. Judge Thompson’s defense to jailing drug-court participants for asserted violations of unidentified drug-court “orders” as “sanctions” was that one of the “sanctions” for noncompliance listed in the Drug Court Participant Handbook compiled by the Lee County Justice Court Drug Court and overseen by Judge Thompson, was incarceration in the -Lee County Detention Center. Judge Thompson’s apparent defense in the hearing was that, - because it was drug court in which incarceration was a “sanction,” he did not have to use contempt-of-court procedures because “drug court is different from regular court.”.
¶ 29. Judge Thompson previously had been cautioned regarding using contempt powers in an improper way against drug-court participants. The Commission notes that one of the “key components” of a drug court as stated in the Mississippi Drug Court Rules, promulgated by the Mississippi State Drug Court Advisory Committee, is to promote public safety “while protecting participants’ due process rights.”
¶ 30. Drug-court case-management system records, maintained pursuant to the AOC, do not indicate that incarcerations or jail time pursuant to contempt of court for failure to comply with drug-court orders were documented as “sanctions,” as each participant for whom records were produced, including examples K.F., S.S., and A.M., had “-0-” by the “sanctions” entry.
¶ 31. According to the Commission, the evidence was clear and convincing that Judge Thompson had treated the violations as “contempt of court.” Evidence presented also clearly established that Judge Thompson had accepted and enrolled participants from other court systems that did not have drug courts, in contravention of Section 9-23-15. Persons from Verona Municipal Court and persons from Tupelo Municipal Court were accepted into the drug-court program, even though those municipalities did not have drug courts.
*867 ¶ 32. Judge Thompson continued to accept and enroll participants in the Lee County Justice Court Drug Court even after receipt of an October 19, 2012, Attorney General’s opinion that such practice did not comport with Section 9-23-15(2). Judge Thompson’s inclusion of these participants from other court systems that did not have drug courts into the Lee County Drug Court program continued after he requested and obtained Attorney General’s Opinion No. 2012-00505 that “Lee County drug court may not accept referrals from municipal courts that do not have a drug court.” Judge Thompson’s request for an Attorney General’s opinion on the topic followed after a similar Attorney General’s opinion had been issued to the City of West Point on July 27, 2012, which the county prosecuting attorney testified he had discussed with Judge Thompson. Testimony established that Judge Thompson was aware of, but chose to disregard, the Attorney General’s opinion because he disagreed with its conclusion and the opinion was not binding law. The Attorney General’s opinion, however, referred to Section 9-23-15(2), which provides that “[participation in the services of an alcohol and drug intervention component shall be open only to the individuals over whom the court has jurisdiction, except that the court may agree to provide the services for individuals referred from another drug court.” Miss.Code Ann. § 9-23-15(2) (Rev.2014).
¶ 33. The county prosecuting attorney ceased referring participants to the Lee County Justice Court Drug Court, and sent a letter to the clerk to that effect on May 30, 2013.
¶ 34. The Lee County Justice Court Drug Court, presided over by Judge Thompson, was granted a Certifícate of Approval by the AOC as a Certified Drug Court program on March 5, 2010. The certification was for a three-year period, and it expired three years from the date of approval on March 5, 2013. No request for recertification was made. The AOC became aware of the expired certification and sent a letter via certified mail dated October 15, 2013, informing Judge Thompson of the expired certificate and the need to immediately suspend operation of the drug-court program.
¶ 35. After the drug court was no longer certified by the AOC, the records of the remaining drug-court participants were not expunged as expected by their participation in the program. Judge Thompson signed orders in blank with the expectation that someone else would fill in the names of the participants to whom ex-pungement would apply.
¶ 36. Clear and convincing evidence did not establish that Judge Thompson signed and filed false reports with the AOC that inflated the number of drug-court participants, and there is no finding of a violation as to that aspect of the formal complaint. Although there were discrepancies in the reports to the AOC as to the fees collected, and the number of participants in the drug court was higher than it should have been (due to keeping participants beyond two years and enrolling participants from other courts that did not have drug courts), the evidence did not rise to clear and convincing as to misconduct by Judge Thompson in reporting.
¶ 37. According to the Commission, the evidence did not establish by the clear and convincing standard that Judge Thompson had instructed drug-court personnel to refuse to cooperate with the Commission and to conceal documents sought by the Commission pursuant to subpoena. As Judge Thompson had interfered with Justice Court Clerk Debbie Berryman’s production of documents requested by the Commission pursuant to subpoena, and there is *868 no finding of a violation as to that aspect of the Formal Complaint, any claim by Judge Thompson that Berryman was biased against Judge Thompson is moot.
¶ 38. At the beginning of the hearing, Judge Thompson indicated that his defense would be that the complaints on which the formal complaint was based were racially motivated. Judge Thompson, however, did not present testimony or evidence of any racial motivation or bias by any witnesses, and the Commission found that no racial motivation or bias against Judge Thompson was established.
¶ 39. According to the Commission, Judge Thompson’s defense throughout the hearing was that he was not knowledgeable about the correct forms to use, the procedures to follow, or the law to apply, and that it was another person’s responsibility to have explained to Judge Thompson what to do as a judge in either justice court or drug court.
ANALYSIS
¶40. This Court, as the ultimate decision-maker in judicial-performance cases, has the power “on recommendation of the Commission to remove from office, suspend, fine, reprimand, or publicly censure any justice or judge of this state for willful misconduct in office or conduct prejudicial to the administration of justice which brings the judicial office into disrepute.” Miss. Comm’n on Judicial Performance v. Skinner, 119 So.3d 294, 307 (Miss.2013) (quoting Miss. Const, art. 6, § 177A). When reviewing a judicial misconduct complaint, we conduct a de novo review, giving great deference to the Commission’s findings, based on clear and convincing evidence, and accord careful consideration to the Commission’s recommendations. Miss. Comm’n on Judicial Performance v. Harris, 131 So.3d 1137, 1141 (Miss.2013). This Court has sole authority to impose sanctions for judicial misconduct. Id. We are not bound by the Commission’s findings and recommendations and may impose lesser or additional sanctions. Miss. Comm’n on Judicial Performance v. Darby, 143 So.3d 564, 567 (Miss.2014).
I. Whether Judge Thompson committed misconduct.
¶ 41. In reviewing the record, we find that the Commission’s findings are supported by clear and convincing evidence. In assisting Hoyle by attending a meeting between Hoyle and Sheriff Johnson in an effort to have Hoyle’s bond-writing suspension lifted, Judge Thompson lent the prestige of his office to assist the private interests of a friend and violated Canons 1, 2(A), 2(B), and 3(C)(1). Judge Thompson’s conduct of depriving K.F. of her right to counsel of her choosing violated Canons 2(A), 3(B)(2), and 3(B)(4). Judge Thompson’s conduct of keeping drug-court participants in the drug-court program longer than the statutorily pei'-mitted two years of Section 99-15-26(2)(a)(v) violated Canons 1, 2(A), 3(B)(2), 3(B)(8), and 3(C)(1). Specifically, Judge Thompson was not faithful to the law, nor did he maintain competence in the law in violation of Canon 3(B)(2). His conduct did not promote public confidence in the integrity of the judiciary (Canon 2(A)). Judge Thompson was not diligent and impartial in the discharge of his administrative duties (Canon 3(C)(1)). Judge Thompson’s conduct of accepting and enrolling participants in the Lee County Justice Court Drug Court from other courts that did not have drug courts, especially after receipt of an attorney general’s opinion directed to Judge Thompson that such practice did not comport with Section 9-23-15(2), violates Canons 1, 2(A), and 3(B)(2). Judge Thompson’s conduct of de *869 priving participants in drug court of their due-process rights when he signed orders of contempt without the persons being properly notified of the charge of contempt or a right to a hearing, and by conducting “hearings” immediately after “staffing meetings” without adequate time for the persons to have proper counsel or evidence presented, violated Canons 1, 2(A), 3(B)(1), 3(B)(2), 3(B)(4), 3B(8), and constitutes willful misconduct in office and conduct prejudicial to the administration of justice.
¶42. We agree with the Commission that Judge Thompson’s lack of understanding and appreciation for the basic legal principles of contempt of court and due-process safeguards cannot be overlooked. Judge Thompson was not faithful to the law, nor did he maintain competence in the law in violation of Canon 3(B)(2). Judge Thompson’s conduct lessened the public’s confidence in the integrity of the judiciary (Canon 2(A)). And Judge Thompson was neither diligent nor impartial in the discharge of his administrative duties in violation of Canon 3(C)(1).
II. Whether the recommended sanction is appropriate.
¶ 43. The sanctions in a judicial misconduct case should be proportionate to the judge’s offense. Harris, 131 So.3d at 1144. To determine whether the recommended sanctions are proportionate to the offense, this Court applies a six-factor test, which includes the following:
(1) the length and character of the judge’s public service; (2) whether there is any prior caselaw on point; (3) the magnitude of the offense and the harm suffered; (4) whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) whether the conduct was willful, intended to deprive the public of assets, or if it exploited the judge’s position; and (6) the presence or absence of mitigating or aggravating factors.
Id. (quoting Skinner, 119 So.3d at 300).
A. The Length and Character of Judge Thompson’s Public Service
¶ 44. Judge Thompson is in his third term as a justice-court judge. Judge Thompson has an extensive history before the Commission during his service as a justice-court judge. See Miss. Comm’n on Judicial Performance v. Thompson, 972 So.2d 582, 590 (Miss.2008) (Thompson I), overruled in part on other grounds by Miss. Comm’n on Judicial Performance v. Boone, 60 So.3d 172 (Miss.2011); Miss. Comm’n on Judicial Performance v. Thompson, 80 So.3d 86, 95 (Miss.2012) (Thompson II). No specific evidence was introduced otherwise regarding the length and character of any other public service.
B. Whether there is any prior caselaw on point.
¶45. This Court has reviewed numerous cases in which judges lent the prestige of the judicial office to advance the private interests of others. In Thompson I, Judge Thompson inappropriately “interjected himself into a case” from which he was recused by attempting to talk to another judge about an arrest warrant against someone he knew. Thompson, 972 So.2d at 587. After the other judge signed the warrant, Judge Thompson asked the deputy clerk not to issue it. Id. Judge Thompson was publicly reprimanded and assessed costs of $100.
¶ 46. In Mississippi Commission on Judicial Performance v. Dearman, 73 So.3d 1140, 1141 (Miss.2011), Judge Teresa Brown Dearman left a voice mail for a Florida circuit court judge identifying herself as a Mississippi justice-court judge and recommending that the Florida judge set bond for a criminal defendant who was *870 Judge Dearman’s Mend. Dearman, 73 So.3d at 1141. Because Judge Dearman had been before the Court recently on another matter that involved numerous violations, the Court imposed “suspension without pay for thirty days, a public reprimand, and costs of $100 upon her.” Id. at 1145. The Court distinguished the punishment from that in a similar case, saying that, while Judge Dearman’s conduct was “analogous to that in Thompson [I], in which we imposed only a public reprimand and costs, we find a harsher sentence is warranted in light of her recent misconduct.” Id.
¶ 47. In Mississippi Commission on Judicial Performance v. Brown, 761 So.2d 182, 184 (Miss.2000), Judge A.L. (Bud) Brown was charged with “willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.” After Judge Brown’s son was arrested for driving under the influence, Judge Brown contacted the judge assigned to the case, the arresting officer, and the arresting officer’s supervisor prior to the trial and throughout the appeal. Id. at 183. Judge Brown defended against the charges; he admitted making the calls, but he denied any misconduct, saying he was acting only as a concerned father. Id. at 183-84. The Court held that the appropriate sanction was a public reprimand, a $500 fine, and an assessment of costs in the amount of $407.75. Id. at 186.
¶ 48. In Mississippi Commission on Judicial Performance v. Brown, 918 So.2d 1247, 1250 (Miss.2005), this Court removed Justice Court Judge Billy Brown from office and assessed costs for his interference in his son’s domestic-abuse case and multiple instances of prior misconduct.
¶ 49. In Mississippi Commission on Judicial Performance v. Osborne, 977 So.2d 314 (Miss.2008) (Osborne II), this Court imposed a public reprimand, costs, and a six-month suspension for, among other things, failing to maintain a high standard of conduct, allowing familial or social relationships to influence the judge’s conduct, and lending the prestige of the office to aid members of his family. Osborne II, 977 So.2d at 327.
¶ 50. In Mississippi Commission on Judicial Performance v. Sanford, 941 So.2d 209 (Miss.2006), this Court imposed a public reprimand, costs, and a thirty-day suspension for interfering with a driving-under-the-influence charge. Sanford, 941 So.2d at 218.
¶ 51. This Court also has reviewed numerous judicial-misconduct cases involving abuse of contempt power. In Mississippi Commission on Judicial Performance v. Byers, 757 So.2d 961 (Miss.2000), Judge Shirley C. Byers held Cynthia Jefiries, a newspaper reporter, in direct contempt for disobeying an order not to publish an article concerning a juvenile proceeding. Byers, 757 So.2d at 963. In holding the reporter in contempt, Judge Byers had no affidavit and held no show-cause hearing, and she provided Jeffries no opportunity to present witnesses or evidence. Id. at 970. This Court held that Judge Byers violated Jeffries’s procedural due-process rights, and based on this abuse of contempt power, along with five other charges of misconduct, we ordered that Judge Byers be publicly reprimanded; pay a $1,500 fine, and pay costs of $2,023.59.
¶ 52. In Mississippi Commission on Judicial Performance v. Willard, 788 So.2d 736 (Miss.2001), Judge Ellis Willard committed multiple counts of judicial misconduct, three of which concerned abuse of contempt power. Judge Willard held clerks in contempt for administrative irregularities and for failing to pull files he requested. Id. at 742^13. Judge Willard failed to provide the clerks with any proce *871 dural due process by not issuing affidavits, warrants, or any notice. Id. at 743. Because “all the rudiments of due process are required before a person can be held in contempt of court,” we found that Judge Willard’s conduct violated Canons 1, 2(A), 3(A)(1), 3(B)(1), which have been revised since this Court’s holding in Willard, but remain substantially the same. Id. at 742-46. Based on this misconduct and a history of egregious behavior, Judge Willard was removed from office. Id. at 746.
¶ 53. In Mississippi Commission on Judicial Performance v. Darby (Darby I), 75 So.3d 1037, 1041 (Miss.2011), Judge Leigh Ann Darby “wrongly imposed sanctions against [a] mother for contempt of court without first affording her due process rights required in a criminal contempt matter.” This Court agreed with the Commission’s recommended sanction and ordered that Judge Darby be publicly reprimanded, fined $500, and assessed costs of $100. Id. at 1044. In Mississippi Commission on Judicial Performance v. Darby (Darby II), 143 So.3d 564, 568 (Miss.2014), Judge Darby “wrongfully incarcerated” eight parents and three minors “without first affording such citizens basic due process rights.” Judge Darby resigned from office, acknowledging that she lacked “the requisite judicial temperament to serve in any judicial capacity and lacks control over her temper which affects her judgment resulting in abuse of her judicial authority.” Darby II, 143 So.3d at 568. Based on Judge Darby’s misconduct coupled with her admission that she lacks judicial temperament to serve in any judicial capacity, this Court ordered that Judge Darby be removed from office, fined $1,000, and assessed costs of $200.
C. The Magnitude of the Offense and the Harm Suffered
¶ 54. As discussed above, Judge Thompson abused the court’s contempt power; Judge Thompson violated the due-process rights of numerous people; Judge Thompson failed to learn and apply fundamental tenets of the law; Judge Thompson attempted to lend the prestige of his office to advance the private interests of another; Judge Thompson illegally incarcerated numerous drug-court participants; Judge Thompson allowed drug-court participants to remain in the'program longer than the law allowed; Judge Thompson failed to perform his duties impartially and diligently; Judge Thompson failed to dispose of judicial matters promptly, efficiently, and fairly; Judge Thompson failed to comply with the law; Judge Thompson’s actions were in excess of the authority and jurisdiction conferred upon him; Judge Thompson failed to diligently discharge his administrative responsibilities without bias or prejudice; Judge Thompson failed to maintain professional competence in judicial administration; and Judge Thompson failed to cooperate with other court officials in the administration of court business. By engaging in the conduct discussed above, Judge Thompson failed to avoid impropriety, caused his impartiality to be questioned, and jeopardized the integrity and independence of the judiciary, thereby eroding public confidence in him as a judicial officer and our state’s judiciary as a whole.
D. Whether the misconduct is an isolated incident or evidences a pattern of conduct.
¶ 55. Judge Thompson’s conduct regarding abuse of contempt powers occurred on multiple occasions and evidences a pattern of conduct. Jailing drug-court participants without adequate due-process hearings occurred on multiple occasions and evidences a pattern of conduct. Judge Thompson previously was warned about, and punished for, conduct similar to what has been proven in the current inquiries. *872 In a prior matter, Judge Thompson attempted to negotiate a settlement in a civil case and then made threats of incarceration when one party would not comply with his verbal admonishment. On June 9, 2006, the Commission issued a private admonishment upon finding that Judge Thompson engaged in ex parte communications with a litigant, attempted to mediate the dispute, and subsequently issued a criminal warrant in a civil case. On January 7, 2008, the Commission sent Judge Thompson a letter of caution reminding Judge Thompson not to lend the prestige of his office to help another. In that matter, Judge Thompson frequently had called a municipal judge and court personnel to inquire about the bonds and incarcerations of people he knew. Also in 2008, this Court, in Thompson I, ordered a public reprimand and assessed costs on a finding of willful misconduct in office because Judge Thompson had interjected himself into a matter involving relatives and had interfered with the issuance and execution of a warrant involving a family member in an attempt to prevent a warrant from being issued and served. Thompson I, 972 So.2d at 586-90. On October 15, 2010, the Commission sent Judge Thompson a letter of caution reminding him not to use his contempt powers in an improper way. In that instance, Judge Thompson had sua sponte incarcerated two drug-court participants upon observing them drinking alcohol at a restaurant. Most recently, this Court found that Judge Thompson had engaged in multiple “counts of judicial misconduct prejudicial to the administration of justice which brought the judicial office into disrepute” and ordered that Judge Thompson be publicly reprimanded, suspended from office for thirty days, fined $2,000, and assessed costs. Thompson II, 80 So.3d at 95. There, we found that Judge Thompson had interjected himself into domestic matters where no case was pending before him; Judge Thompson signed an order in a separate matter where there was no case pending before the court; Judge Thompson engaged in ex parte communications; Judge Thompson interfered with another judges’ cases; and Judge Thompson improperly dismissed traffic cases. We agree with the Commission that the aforementioned conduct shows that Judge Thompson has not learned from those prior proceedings, and his misconduct in the present proceeding evidences a pattern of conduct.
E. The Extent to Which Judge Thompson’s Conduct was Willful
¶ 56. In Harris, this Court held that “To determine the extent to which the conduct was willful, we will examine whether the judge acted in bad faith, good faith, intentionally, knowingly, or negligently.” Harris, 131 So.3d at 1146.
¶ 57. By keeping drug-court participants well past the statutory maximum length of time, Judge Thompson continually disregarded the law. Judge Thompson received information from numerous sources regarding the impropriety of his actions, yet he continued without regard to a proper understanding of the law. Judge Thompson’s conduct in jailing drug-court participants for inordinate periods of time for “contempt” of court for “failure to comply with drug court orders” without adequate due-process hearings and keeping them jailed for periods well in excess of the time due the underlying crime was knowing and deliberate. Judge Thompson improperly accepted participants into the Lee County Justice Court Drug Court from jurisdictions without drug courts and continued to do so after receiving an Attorney General’s opinion stating that a statute precluded him from doing so. Thus, his actions were knowing and deliberate. Judge Thompson permitted con *873 tempt proceedings to continue against Deputy Miller to even after being informed that Judge Thompson was in error in the forms he had directed Deputy Miller sign and serve. Judge Thompson signed and filed an affidavit of indirect contempt against Deputy Miller well after being informed of his error. We agree with the Commission that this conduct was knowing and deliberate as well as deceptive after Judge Thompson announced in open court that all contempt charges were dismissed and were no longer being pursued.
F. The Extent to Which the Conduct Exploited the Judge’s Position to Satisfy his or her Personal Desires or Was Intended to Deprive the Public of Assets or Funds Rightfully Belonging to It
¶ 58. The evidence does not support a finding that Judge Thompson received any monies or that his actions were intended to deprive the public of assets or funds rightfully belonging to it. The funding for the drug court did not increase due to the number of participants, and there is no evidence that Judge Thompson received monies from the drug-court funds or otherwise deprived the public of assets or funds rightfully belonging to it. Likewise, there is no evidence Judge Thompson received any favors of any kind or acted in a manner indicative of an improper personal motivation, other than lending the prestige of his office to Hoyle, who sought to be reinstated as a bail bondsman with the sheriff.
G. The Presence or Absence of Mitigating or Aggravating Circumstances
¶59. Mitigating factors include that Judge Thompson no longer operates the Lee County Justice Court Drug Court, it having ceased operation in 2013. Although Judge Thompson did not specifically offer mitigating factors, the Commission noted testimony that Judge Thompson has encouraged community support for a drug court and has encouraged volunteers to donate time and services to the drug court.
¶ 60. Among aggravating circumstances are that drug-court participants were jailed for long periods of time without adequate due-process hearings. T.L. was kept in the drug-court program for three years and four months in violation of statute. Further aggravating that wrong, at the end of his time in drug court, T.L. was incarcerated for more than six months on the underlying charge of first-offense simple possession of marijuana, which carries no jail time and was the basis of his original entrance into drug court. See Miss. Code Ann. § 41-29-139(2) (Rev.2013). Other participants also were jailed for days, weeks, or months at times in excess of the penalty justified by the underlying charges on which their entrance to drug court was based. Judge Thompson has been cautioned before regarding in adequate due-process procedures for contempt of court for failure to follow statutory dictates. And he has been reminded that disregard of state law or even ignorance of the law. is not an excuse, as justice-court judges are to be knowledgeable in the area in which they administer justice. See Thompson II, 80 So.3d at 93. After having been told numerous times he was violating statutes and receiving a specific Attorney General’s opinion he requested, Judge Thompson continued to operate the drug court in violation of the law concerning admission of participants. As discussed above, Judge Thompson has been sanctioned before by this Court for using the prestige of his judicial office to further the interests of family and friends. By inserting himself into the dispute between the Lee County Sheriff and a bonding company agent who was also a family friend and a person with whom the Judge *874 Thompson socialized, he once again exhibited blatant disregard for correction and an unwillingness to follow previous directives and sanctions from the Court. Throughout the hearing, Judge Thompson attempted to “pass the buck” to others and claimed that it was another person’s responsibility to have explained to him what to do as judge in either justice court or drug court, and that he had done nothing wrong in failing to be knowledgeable of the law or procedures he was implementing. Throughout the entire process with the Commission, Judge Thompson has failed to accept any responsibility for the failures that occurred during the events covered by these multiple complaints.
CONCLUSION
¶ 61. In applying the foregoing factors, we stress that “the primary purpose of sanctions is ‘to restore and maintain the dignity and honor of the judicial office and to protect the public against future excesses,’ rather than punishment of the individual.” Skinner, 119 So.3d at 300 (quoting Boone, 60 So.3d at 185). Further, the sanction in a judicial misconduct case should fit the offense. Id. As this Court held in Mississippi Commission on Judicial Performance v. McGee, 71 So.3d 578, 585 (Miss.2011), “[t]he appropriate sanction should recognize the misconduct, deter and discourage similar behavior, preserve the dignity and reputation of the judiciary, and protect the public.” This Court also has held that prior misconduct on the part of the judge may be considered. See Miss. Comm’n on Judicial Performance v. Lewis, 913 So.2d 266, 271 (Miss.2005); Miss. Comm’n on Judicial Performance v. Jenkins, 725 So.2d 162, 170 (Miss.1998). This Court has considered Judge Thompson’s prior history with the Commission, including that Judge Thompson received warning or cautionary letters; that in 2008 Judge Thompson was publicly reprimanded for misconduct; and that in 2012 was suspended for thirty days, fined $2,000, and publicly reprimanded for misconduct. The matters in the Findings of Fact and Conclusions of Law discussed above are more egregious than the prior charges, thus warranting a greater sanction to restore confidence in the judiciary. We are concerned, and take into consideration, that Judge Thompson has not taken responsibility for his actions, and the likelihood of those actions being repeated in the future is great. Judge Thompson’s willful disregard for his past discipline “illustrates the magnitude of the [offenses] and indifference to litigants and [the Commission and the Supreme] Court in continuing to engage in [misconduct].” Lewis, 913 So.2d at 273; see also Miss. Comm’n on Judicial Performance v. Osborne, 16 So.3d 16, 25 (Miss.2009) (Osborne IV).
¶ 62. This Court consistently has held that “[w]hen the facts of the case and the law dictate, [the] Court has a duty and responsibility to remove a judge.” Lewis, 913 So.2d at 273 (Miss.2005) (citing Willard, 788 So.2d 736; Miss. Comm’n on Judicial Performance v. Spencer, 725 So.2d 171 (Miss.1998); Jenkins, 725 So.2d 162; Miss. Comm’n on Judicial Performance v. Dodds, 680 So.2d 180 (Miss.1996); Miss. Comm’n on Judicial Performance v. Milling, 651 So.2d 531 (Miss.1995)).
¶ 63. Having considered the foregoing Findings of Facts and Conclusions of Law, and the Skinner factors enumerated above, we agree with the Commission’s recommendation, and we order that Judge Thompson be:
a. Removed from office, effective on the date of issuance of this Court’s mandate.
b. Assessed a fine in the sum of $3,500; and
*875 c. Assessed costs of this proceeding in the sum of $7,693.38.
¶ 64. The Clerk of this Court shall send copies of this opinion and the mandate of this Court to the Chancery Clerk of Lee County, and the Circuit Clerk of Lee County, as well as to the Lee County Justice Court Clerk, the County Administrator of Lee County, and the Lee County Board of Supervisors.
¶ 65. LEE COUNTY JUSTICE COURT JUDGE RICKEY W. THOMPSON SHALL BE REMOVED FROM OFFICE, EFFECTIVE ON THE DATE OF ISSUANCE OF THIS COURT’S MANDATE, FINED $3,500, AND ASSESSED COSTS IN THE AMOUNT OF $7,693.38.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, KING AND COLEMAN, JJ„ CONCUR.

. Initials are used throughout this opinion to denote persons involved in drug-court matters.

. The committee was comprised of Camille Henick Evans, Esq., Presiding; Judge Jimmy Morton; and Cornelia Gayden.