KING, Justice,
concurring in part and dissenting in part:
¶ 54. Today the majority finds that Chancellor David Shoemake’s negligence and inattention resulted in the dissipation of assets' from Victoria Newsome’s estate. The majority fines Chancellor Shoemake $2,500 and suspends 'him from office for a period of thirty days without pay. Yet the majority does not account for the fact that Chancellor Shoemake’s negligence and inattention cost Victoria Newsome, an incapacitated 'Ward of the court, at least $23,000 that she is unable to recuperate. Becaus'e I believe that Chancellor Shoemake should be required to make Victoria’s estate whole in addition to the sanctions'laid out by the majority, I respectfully dissent in part.
¶ 55. "Chancellor Shoemake, through his position as chancellor, had a duty to act as Victoria’s “superior guardian.” Carpenter v. Berry, 58 So.3d 1158, 1162-63 (Miss.2011). Superior guardians are required to take all necessary steps to conserve and protect the best' interest of the wards of the court. ’ Id. at 1163. “It is the inescapable duty of the said court and of the chancellor to act With constant care and solicitude towards the preservation and protection of the rights of infants and persons non compos mentis.” Mississippi State Bar Ass’n v. Moyo, 525 So.2d 1289, 1293 (Miss.1988).
*1226 ¶ 56. Chancellor Shoémake, - after he had - signed the initial order transferring Victoria’s case back to Chancellor Walker, continued, signing orders on a case that was no longer assigned to him. On January 24, 2012, six months after the case was transferred back to Chancellor Walker, McNulty presented Chancellor Shoemake with a petition requesting $23,000 to be paid to C.T. Construction for reimbursement for materials allegedly stolen from the construction site. McNulty was a newly licensed attorney who was acting as both the guardian ad litem and the attorney for the conservatorship. The contractor attached an affidavit to, the petition which attributed no fault to the conservator or ward and which indicated that the materials might never have been delivered to the job site.[6] The next day, Chancellor Shoemake signed an order directing payment of this $23,000. Yet Chancellor Shoemake did not request evidence showing that the materials were actually stolen or proving that the materials were stolen through any fault attributable to the ward or to the conservator. Chancellor Shoe-make also did not hold an evidentiary hearing with testimony from a representative for Victoria’s interests. Additionally, Marilyn Newsome testified, and McNulty verified, that C.T. Construction’s own, employees might have been responsible for the loss. The petition requesting this relief was unsworn and' signed only by McNulty.[7]
¶ 57. This Court may impose additional sanctions when appropriate. Miss. Comm’n on Judicial Performance v. DeLaughter, 29 So.3d 750, 754 (Miss.2010). In each of the cases the majority cites that is on point, the judge at issue was reprimanded for improperly reducing the fees of the defendants before him.[8] Here, Chancellor Shoemake has cost Victoria at least $23,000 through his negligence and inattention. As the majority states, failure to act as the superior guardián of a ward is grievous. Chancellor Shoemake had an extraordinary duty to conserve and protect Victoria’s assets. Chancellor Shoemake failed in his extraordinary duty by signing a questionable ordér authorizing payment of $23,000 without holding a hearing, without requiring testimony from a representative of Victoria’s interests, and without evidence that Victoria’s estate was at fault for the alleged loss.
¶ 58. Of course, the primary purpose of. sanctions is to maintain public confidence in the judicial process. Miss. Comm’n on Judicial Performance v. Fowlkes, 121 So.3d 904, 908 (Miss.2013) (citing Boone, *1227 60 So.3d at 185). However, this Court also must sanction judges for misconduct. “The appropriate sanction should recognize the misconduct, deter and discourage similar behavior, preserve the dignity and reputation of the judiciary, and protect the public.” Miss. Comm’n on Judicial Performance v. Thompson, 169 So.3d 857, 874 (Miss.2015) (emphasis added) (quoting Miss. Comm’n on Judicial Performance v. McGee, 71 So.3d 578, 585 (Miss.2011)). This Court is the ultimate decision-maker in judicial performance cases and has'the inherent authority to decide issues concerning judicial misconduct. Miss. Comm’n on Judicial Performance v. Martin, 995 So.2d 727, 731 (Miss.2008). Failure to act as Victoria’s superior guardian was misconduct and I believe this Court has the authority to require Chancellor Shoemake to make Victoria’s estate whole.[9]
¶59. Because Chancellor Shoemake’s negligence and inattention cost Victoria a substantial amount of money that she is unable to regain, I would require Chancellor Shoemake to make Victoria’s estate whole in addition to the penalties laid out by the majority. Therefore, I dissent in part.
KITCHENS, J., JOINS THIS OPINION.

. The affidavit stated:
Due to the delivery schedule of our suppliers, we were not always present at the site when materials were delivered. Deliveries were made in stages, and are based on what is available at that time and what is needed at that stage in construction. Therefore, we are unable to have an up to date check'and balance as to which materials are on the site' at what time. Furthermore, the billing process, is on a ;monthly basis, so we are unable to compare the invoice with the materials delivered.

. And while Chancellor Shoemake argues that the Construction ■ Management Agreement states that "Homeowner will bé responsible for all insurance coverage'and will not hold Contractor liable ...,’’ there is no evidence that this’provision would include stolen materials. Additionally, Chancellor Shoemake states that it was McNulty’s job to procure insurance for the estate and that McNulty failed to do so. Yet, when Chancellor Shoe-make signed the order authorizing $23,000 out of Victoria’s estate based on this provision, there is, no evidence showing that he inquired into why no insurance policy was in place.

.See Mississippi Comm’n on Judicial Performance v. Boone, 60 So.3d 172 (Miss.2011); Mississippi Comm’n on Judicial Performance v. Gordon, 955 So.2d 300 (Miss.2007); and Mississippi Common on Judicial Performance v. Dearman, 66 So.3d 112 (Miss.2011).

. The majority quotes In re Branan, 419 So.2d 145 (Miss.1982), and' states that this Court previously has decided that restitution is not a permitted sanction. Yet, in Branan, restitution from the standpoint of protection of the public was not addressed. In that case, the Commission recommended that a justice court judge be assessed civil costs for the procedure he used in collecting bad checks, an issue much different from the one presently, before us.